Doris V. NUGENT, Plaintiff and
Respondent-Appellant,

v.

Milton E. NUGENT, Jr., Defendant and
Appellant-Respondent.

No. 8406.

Supreme Court of North Dakota.

July 7, 1967.

Rehearing Denied Aug. 22, 1967.

---

Jack R. Christensen, Bismarck, for defendant and appellant-respondent.

Zuger, Zuger & Bucklin, Bismarck, for plaintiff and respondent-appellant.

ERICKSTAD, Judge.

This is an appeal by Milton E. Nugent, Jr., from an amended judgment and decree dated September 29, 1966, the pertinent part of which reduced the alimony or support payment required of him to be paid to his former wife, Doris V. Nugent, from 33⅓ per cent of his gross monthly income from professional earnings as a medical doctor, as was required in the original divorce decree, to 16⅔ per cent of his gross monthly income from his professional earnings as a medical doctor, as of July 1, 1966, providing he purged himself of contempt by complying by October 1, 1966, with the court's order of August 2, 1966. (That order required Milton to purge himself of contempt by making payments by September 1, 1966. On August 31, 1966, another order required him to make necessary payments by October 1, 1966, and the judgment set the date as October 1, 1966.)

Doris married Robert W. Hirsch on October 17, 1965. She has cross-appealed from the amended judgment and decree.

Doris initiated her action for divorce by summons and complaint dated July 1, 1964. At that time she was represented by a Bismarck attorney, but Milton was not represented by any attorney. On this appeal Doris is not represented by the attorney who represented her in securing the divorce but by a different one.

Paragraph 5 of the complaint read as follows:

That the parties have entered into a property settlement agreement, which is attached hereto, marked plaintiff's exhibit "A" and made a part hereof by reference, which plaintiff asks the Court to incorporate in its Order, if a divorce is granted on the merits[.]

The original judgment in the divorce proceeding is dated July 6, 1964, and includes the provisions contained in the so-called "property settlement agreement," Milton (without the advice of counsel) having waived the time for answering and having consented to the entry of a judgment without further notice to him.

The pertinent part of the August 2 order reads as follows:

The Defendant is hereby ordered to pay to the Plaintiff the following amounts to correct all defaults by him up to June 1, 1966:

[A] $10.84; and

[B] $1,388.88, with interest at 4% from January 1, 1966, until paid; and

[C] $694.44, with interest at 4% from February 1, 1966, until paid; and

[D] $694.44, with interest at 4% from March 1, 1966, until paid; and

[E] $694.44, with interest at 4% from April 1, 1966, until paid; and

[F] $694.44, with interest at 4% from May 1, 1966, until paid; and

[G] $694.44, with interest at 4% from June 1, 1966, until paid.

The Defendant is ordered to pay the above items [A] through [G] before September 1, 1966.

It is adjudged that a reasonable attorney's fee to the Plaintiff's attorney for his work involved in the Order to Show Cause is $250.00. The Defendant is or-

dered to promptly pay to the Plaintiff the sum of $250.00 for attorney's fees.

The Defendant's motion for modification of judgment is conditionally and partially granted, as follows:

If before September 1, 1966, the Defendant has made the following payments:

1. Payment of all amounts due to the Plaintiff as of June 1, 1966, as set out above in items [A] through [G]; and

2. Payment of all child support payments due between June 1, 1966, and September 1, 1966; and

3. At least the sum of $694.44 for a one-third share of his gross monthly income from medical practice for the month of June, 1966; and

4. One-sixth of his gross monthly income from medical practice during the months of July and August, 1966;

then, the Judgment of Divorce entered herein on July 6, 1964, may be modified, reducing the monthly payment to the Plaintiff specified in paragraph 5 of that Judgment.

The modification shall be for payments for income earned after July 1, 1966, and shall be a reduction from 33⅓% of Defendant's gross monthly income to 16⅔% of Defendant's gross monthly income. (No change shall be made in the child support payments, or other provisions of the judgment or for payments for income prior to July 1, 1966.) * * *

A logical explanation of that part of the order appears to be: that item [A] is the interest on the child support payments of $400 per month due for December 1965 through March 1966, which were not made until March 19, 1966; that the $1,388.88 of item [B] represents the alimony or support payment due (based on one-third of Milton's annual gross income from medical practice of $25,000) for November and December

1965; and that the $694.44 of items [C] through [G] represents one-third of Milton's gross income from medical practice for January through May 1966.

It is Milton's contention that on his motion to amend the original divorce judgment, the trial court should have amended the judgment so that no alimony or support payments to Doris would be required after October 17, 1965, the date of her marriage to Mr. Hirsch. If Milton is correct, he owes nothing in the way of alimony or support payments to Doris, as his payments based upon one-third of his gross income from his medical practice were made through October 1965.

On the other hand, Doris contends that no change may be made in a divorce judgment while a party seeking the change is in contempt of court, and that Milton was in contempt of court when he made a motion on June 20, 1966, to amend the original judgment to eliminate the requirement that he pay one-third of his gross income from professional services as a medical doctor to Doris as alimony or support money.

It should be noted that Milton made a similar motion on November 8, 1965, which the trial court denied by order dated January 5, 1966. Milton did not appeal from that order. By application dated February 4, 1966, Doris sought an order to show cause why Milton should not be required to make child support payments then due in the amount of $1,200 and alimony or support payments to Doris for November and December 1965 and for January 1966.

In its memorandum opinion of July 22, 1966, the trial court considered Doris's motion for an order to show cause and Milton's second motion for an amended judgment (which were heard June 27, 1966) and directed Doris's counsel to prepare an appropriate order to carry out the conclusions contained in that memorandum opinion. The order called for in the memorandum opinion is the August 2, 1966, order previously quoted and discussed herein.

On August 31, 1966, the trial court ordered that the judgment be amended in accordance with the memorandum opinion of July 22.

Pursuant to motion dated September 22, the trial court entered its order on October 7, staying execution of the amended judgment except as it related to the payment of child support, the payments for child support being separate from the alimony or support payments to Doris. That order required, as a condition to staying execution of the judgment, that a supersedeas bond for $10,000 be filed with the clerk of district court or that a cash deposit or a certificate of deposit payable to the clerk in that amount be filed with him. In compliance therewith such a certificate of deposit was filed with the clerk. Other provisions were made for increasing the size of the certificate of deposit as time went on.

No contention has been made that the child support payments, commencing with the payment due in April 1966, have not been promptly made.

If Milton is correct in his contention, it would appear that as of November 8, 1965, the date of his first motion to amend the judgment, he was not in default, and that as of June 20, 1966, the date of his second motion to amend the judgment, he was in default only $10.84, the interest on the child support payments for the period December 1965 through March 1966, the principal amount of those payments having been received on March 19, 1966.

That the decisions of the courts which have considered the effect of a divorced wife's remarriage upon the continuance of alimony vary greatly is obvious from the annotation in 48 A.L.R.2d 270 and the references to it in A.L.R.2d Later Case Service.

■ Having no specific controlling statute and this being the first instance in which this question has been presented to this court, we are faced with the responsibility of determining the rule to be applied, the objective being to reach a just and equitable result in this case without establishing a precedent which might result in injustice and inequity if the rule were to be applied in other cases in which the facts were different. So that the trial court and this court on trial de novo on appeal might exercise equitable powers when circumstances so require, we reject the rule applied in some jurisdictions that remarriage of the divorced wife ipso facto terminates the former husband's obligation to pay alimony.

■ Having this objective in mind, we adopt the rule adopted by the Supreme Court of Maine in Bubar v. Plant, 141 Me. 407, 44 A.2d 732, 734, in which that court said:

We think that the correct rule is that the remarriage of a divorced wife does not of itself terminate her right to alimony, but that it does make out a prima facie case which requires the court to end it, in the absence of proof of some extraordinary circumstance justifying its continuance. It is a question in which public policy plays an important part; and it is against public policy in the ordinary case for one man to be supporting the wife of another who has himself assumed the legal obligation for her support. The award of alimony is a continuance under the order of the court of the husband's obligation to support the wife, and there is no reason why that obligation should remain when another husband has assumed it. * * *

The Maine court supported its position with a quotation from a decision of the Supreme Court of Errors of Connecticut. For clarity we quote more fully from that opinion:

* * * Reason requires us to hold that the remarriage of the wife should relieve the husband from the obligation of supporting the wife of another man. To permit her to have alimony from the

first husband as an equivalent for her support after she had secured the legal obligation from the second husband to support her would give her support from her present and her former husband, and for each subsequent divorce for the husband's fault she might again be awarded alimony for her support. The legislative intent never could have contemplated such a situation. It would offend public policy and good morals. It is so illogical and unreasonable that a court of equity should not tolerate it. Well has it been characterized as legally and socially unseemly. Two husbands should not be liable for the obligation of support for a woman who is the divorced spouse of one and wife of the other. [Citations omitted.]

Cary v. Cary, 112 Conn. 256, 152 A. 302, 303–304.

■ Applying the rule that remarriage of a divorced wife makes out a prima facie case which requires the court to end alimony payments in the absence of proof of some extraordinary circumstance justifying its continuance, we conclude that there is in this case no extraordinary circumstance justifying continuance of the alimony payments.

In *Bubar* the Maine court said that the only reason given by the wife for continuing the alimony was that she would not be able without it to live with her second husband in the way in which she lived prior to her marriage to him. In the instant case Doris's argument is quite similar in that she contends that the alimony should be continued because she would not be able without it to live with her second husband in the way in which she lived while married to Milton. We do not think that such an argument is any more valid than the argument made by the wife in *Bubar*. It should be noted that the Maine court, in answer to the wife's contention there, said that the reason given by the wife in that case was "hardly a valid reason

for its [the alimony's] continuance." The court concluded by saying:

* * * The first husband is under no obligation to support her as another man's wife in the same status as she lived as a single woman.

Bubar v. Plant, supra, 44 A.2d at 734.

In the instant case it is alleged that in the last few years of the marriage existing between Milton and Doris, Milton had an income averaging $28,000 a year, and that because Doris's present husband (who, incidentally, holds a master of science degree in chemistry and has been employed by Shell Oil Company for many years, earns not in excess of $15,000 a year, has children of his own whom he must support, has medical expenses due to open heart surgery performed on his youngest son this year, and has other expenses) is not in financial condition to support Doris in the manner in which Milton supported her, the alimony payments should be continued.

It is our view that those facts do not constitute such extraordinary circumstances as would justify the continuance of the alimony or support payments to Doris. It should be noted that both the original judgment and the amended judgment provided for the payment of child support in substantial amounts, lessening as each daughter became college educated or married or terminated her education, that Milton is not appealing from that part of the judgment, and that he is making those payments.

If it is believed that conditions have changed, justifying an increase in the child support payments, an application for such change in the judgment could be made to the trial court, which could, on proper showing, make the necessary changes. On the record before us, however, we are unable to conclude that any change in that part of the judgment is justified.

■ Lest it be contended that this court has ignored the allegations made by Doris that Milton was the one at fault and solely

responsible for the divorce which destroyed their marriage, and that she, from the time they were married while Milton was still in medical school contributed to their livelihood so that he might continue his medical education, including advanced training, we do not believe that such factors constitute such extraordinary circumstances as would justify the continuance of the alimony payments in this case, Doris having voluntarily elected to marry another, who now must assume the responsibility for her support.

 The next question with which we are confronted, in light of the fact that Milton did not appeal from the order denying his first motion to amend the judgment and the fact that he was in arrears in making alimony payments to his wife at the time of the second motion, is whether the trial court and this court on a trial de novo on appeal have the power to cancel arrears of alimony accrued after Doris's second marriage. The question therefore is whether there may be a retrospective modification or termination of installments of alimony which have accrued following the remarriage of the wife. We believe there may be a retrospective modification or termination of such installments of alimony, and that in this case the trial court should have terminated the installments of alimony as of the date of Doris's marriage to Mr. Hirsch. In so deciding we recognize that remarriage of a wife who has been awarded alimony payments creates an exception to what we said in Richter v. Richter, 126 N.W.2d 634, 635 (N.D.1964), to the effect that a divorce decree cannot be modified as to accrued but unpaid alimony.

An important factor contributing to our conclusion in this case is that Milton made a timely motion to amend the judgment when he was in no manner in default, and although he failed to appeal from the order which denied that first motion, we believe that he should not be penalized for his failure under the circumstances of this case, wherein we have found that there are no extraordinary circumstances which justify the continuance of the alimony payments.

One of the most recent decisions relating to this question of the power of the court to act retrospectively is that of the Supreme Court of New Mexico rendered in 1956 in Kuert v. Kuert, 60 N.M. 432, 292 P.2d 115, 119. In that case the court reviewed the various views adopted by courts of this country and determined that it preferred to take what might be termed the middle ground. It announced its rule as follows:

> On the application of the divorced husband to abate support payments to the divorced wife on the ground of her remarriage such application should be granted as of the date of her remarriage unless she proves extraordinary conditions justifying continuance of the former husband's duty to support his former wife after she has become the wife of another man, and the evaluation and effect to be given these conditions rests in the sound discretion of the trial court.

This rule is quite similar to that adopted by Maine in determining whether the remarriage of the wife should justify termination of alimony payments.

 We are of the opinion that the determination of whether alimony payments should be terminated when a divorced wife has remarried, and, if so, when, is within the sound discretion of the trial court; and that unless there is a showing of abuse of this discretion, the trial court's decision will not be reversed on appeal.

 In the instant case, however, it appears that the trial court did not exercise its judicial discretion, it being of the opinion that it was without power to abate the alimony payments in which Milton was in arrears. Under these circumstances we are inclined to remand the case to the trial court with instructions to amend the judgment accordingly, terminating the alimony as of the date of the second marriage; but, as Doris has asserted still another point which

we must consider, we shall take that up at this time.

That point is that the North Dakota case of *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817, controls. She seems to contend that the provisions for alimony were so intertwined with the provisions for a division of the property in the agreement entered into between the parties, that when the court included the agreement in the judgment, it intended the whole agreement as a final adjustment of their property rights, and thus that the court is now without power to amend the judgment to eliminate or modify the monthly alimony or support payments. Doris refers us to a part of the opinion which we quote herein more fully:

It seems clear from the foregoing statement of facts that the parties intended to adjust finally and fully all property rights and settle all claims arising out of the marriage relation. It is clear, also, that the court, in making the decree, intended to and did make a final adjustment and settlement of property rights and claims between the parties. It is, in other words, evident that, on principle, in so far as the property rights of the parties were adjusted in the decree, the decree rests on the same basis as if the court had awarded a gross or lump sum to the wife in lieu of her interest in the property of her husband, of which the court, in a divorce action, could properly take cognizance. The award to the wife, in view of the findings and of the circumstances, cannot properly be construed as alimony in the true, technical sense of the word, namely, an allowance for the support and maintenance of the wife alone. We are clear that the court intended, and that such is the effect of the decree, to settle finally, upon the basis of the agreement submitted to it, all the property rights of the parties. Under such circumstances, justice and a regard for the intent of the parties and the purpose of the court requires that the same effect be given to the decree as if a gross sum had been awarded to the wife, or real and personal property divided or apportioned between them.

As the conclusions of the court in *Sinkler* were based upon the specific facts of that case, we believe it should be noted that by the terms of the agreement entered into between the parties in that case, the wife released all of her interest in the real property of her husband, and, in effect, in exchange for that release, her husband agreed that she should have as her absolute property certain specific personal property; that he would pay to her $225 monthly during the term of her natural life as permanent alimony; and that out of this alimony she would support the children and keep a home for them without charge to them until they became twenty-five years of age. There was in that agreement also a provision that neither party should at any time apply to any court to either decrease or increase the alimony. That provision was incorporated in the divorce decree.

In discussing the facts in detail, the court pointed out that the wife did not ask the court to award her the homestead or any part of the property at that time owned by her husband, who was a practicing lawyer at Minot. The court emphasized that the parties agreed that the wife should convey to her husband her interest in specified real property in Minot and also some farmland; that the wife should receive certain specified personal property, namely, all of the furniture in the so-called "Sinkler flat" in Chicago; and that the wife released her rights under the prevailing statute, as the innocent party, to have the homestead assigned to her either absolutely or for a limited period.

One recognizes immediately the difference between the facts in *Sinkler* and those in the instant case.

In this case by the agreement between the parties the wife acquired title to the home of the parties, subject to a mortgage in the sum of $17,396.71, which home she sold for $41,500.00, and all furniture, fix-

tures, furnishings, and supplies within the home with some exceptions. Of the two automobiles which they owned, she acquired the Nash Rambler station wagon plus $2,600 and a commitment from the husband that he would pay the license and sales tax expense when she traded the Nash Rambler for a 1964 model automobile, whereas the husband acquired the Volkswagen. In paragraph 7 of the agreement the husband agreed to pay to the wife for the support, maintenance, and education of their three children the sum of $600 per month until one of the children should complete her four-year college education, become married, or discontinue her education, at which time the amount should be reduced by the sum of $200 per month and likewise should be reduced when the second of the three children should complete her four-year college education, become married, or discontinue her education. It was specifically provided that when the youngest daughter began her college education, the payment should be $300 per month.

The husband was to retain, together wih his personal paraphernalia, the following: (1) bassoon and music and certain piano music selected by him; (2) one piano, other than the wife's choice, and piano tuning instruments; (3) two cameras, accessories, developing, and enlarging equipment; (4) all records of a business nature from September 1941 to the date of the agreement; (5) all machine tools and shop equipment; (6) Nugent family heirlooms; (7) his medical books and medical equipment; (8) all stocks and bonds and all insurance policies of which he was the owner, together with an insurance policy on the life of one of the daughters, except Bismarck Industries stock, City Center Hotel stock, and oil stocks. Milton valued the stock and property he received at $27,224.

Our view of the evidence as presented in this case through affidavits, requests for admissions and admissions, and interrogatories and answers to interrogatories, is that the property was divided between the parties on a fairly equal basis. Thus, on the basis of the facts alone, Sinkler may be clearly distinguished from this case.

■ In this case, although the parties denominated their agreement a "property settlement agreement," and although they stated specifically in paragraph 1 thereof that it was understood "that this instrument is intended to settle the property rights of the parties hereto in all respects," we do not believe that such a denomination of the agreement or such a statement of the intent of the parties or the fact that the court included its provisions in the judgment, makes the provisions in paragraph 5 of the judgment, relating to the payment of alimony or support money to the wife of one-third of the gross monthly income of the husband from his professional earnings as a medical doctor, so inseparable from the provisions of the judgment relating to the division of property that the trial court could not thereafter modify or eliminate the alimony provisions of the judgment under the power given the court by § 14–05–24, N.D.C.C.

That section reads as follows:

14–05–24. Permanent alimony—Division of property.—When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects.

North Dakota Century Code.

■ Concluding that under the facts of this case the provisions of the judgment relating to the payment of alimony or support payments to the wife are severable from

the provisions of the judgment relating to the division of property, we hold that the trial court and hence this court on appeal in a trial de novo have the power to modify the judgment as it relates to the alimony or support payments to the wife.

 In light of what we have decided thus far herein, we find it unnecessary to discuss at length Doris's contention that Milton, being in contempt of court at the time he made his second motion for an amended judgment, was in no position to seek a favor from the court. In support of her position she refers us to the rule stated in Olson v. Olson, 76 N.D. 553, 38 N.W.2d 32, 34, that "It is a general rule, and especially in courts of equity, that the party in contempt will not be heard to ask any favor of the court, in the case in which the contempt occurs, nor permitted to take any affirmative steps in the particular litigation, except only such as are necessary to his defence against the charge of contempt, until he has purged himself of such charge." In this case Milton was charged by Doris with contempt, and his defense was that he was not liable for the alimony payments which occurred after Doris's remarriage. Doris's motion alleging contempt and Milton's motion asking for a modification of the judgment, which were heard at the same time, both involved the issue of liability for alimony payments which accrued after Doris's remarriage. Under these circumstances we do not believe the general rule stated herein should be applied.

Having decided that Milton is entitled to an abatement of the alimony or support payments from the date of the remarriage, it would be incongruous for us to hold that because he failed to make those payments (and a few dollars in interest on the child support payments), his former wife should reap what in effect would be the benefit of having two husbands at one time.

The judgment of the trial court is therefore modified, and the case is remanded to the trial court with instructions to amend the judgment in conformity with this decision.

STRUTZ, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.