Sharon NASTROM, Plaintiff and Appellant,

v.

Ned NASTROM, Defendant and Appellee.

Civ. No. 9375.

Supreme Court of North Dakota.

Jan. 13, 1978.

As Amended on Denial of Rehearing Feb. 2, 1978.

488

Daniel J. Chapman, Bismarck, for plaintiff and appellant.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellee; argued by Patrick A. Conmy, Bismarck.

PEDERSON, Justice.

Sharon Nastrom sought and was granted a divorce from Ned Nastrom on the ground of irreconcilable differences. She appeals from portions of the decree of the Burleigh County District Court, contending that the division of property is inequitable and clearly erroneous, and that a provision that alimony payments terminate should she remarry is clearly erroneous. We reverse and remand.

Sharon and Ned were married at International Falls, Minnesota, on April 16, 1954. Both were then very young and neither

brought property into the marriage. Since then they have prospered and, when the divorce was granted in February 1977, they possessed substantial real, personal and business assets. Children were born of the marriage, though only one, a son now 17, has not attained his majority.

I.

Much of Sharon's argument is directed toward the condition of remaining unmarried, placed upon her continued receipt of alimony payments. She asks this Court to determine that the alimony is actually in the nature of a property settlement and should continue regardless of her remarriage.

In *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817 (1923), the North Dakota Supreme Court held that an award of "alimony" could not be modified pursuant to the statutory predecessor of § 14–05–24, NDCC— Section 4405, C.L.1913. The decision was based on the trial court's findings of fact, and concluded that the term "alimony" was not used in its technical sense, but instead referred to cash payments made as a distribution of the estate of the parties. The court then stated, ". . ." notwithstanding statutes giving control over the decree with right to modify the same, . . . a judgment decreeing specific real property or finally distributing the estate is a final judgment, and cannot be modified, except, of course, in the same manner and on the same grounds as other judgments." (Cites omitted.) 194 N.W. at 820. See also, *Dietz v. Dietz*, 65 N.W.2d 470 (N.D.1954), and *Sabot v. Sabot*, 187 N.W.2d 59 (N.D.1971).

■ We agree that, were the alimony ordered by the trial court in the nature of a property settlement, it would be improper for the court to order it terminated upon Sharon's remarriage. It is, however, also true that, if this Court can determine from the circumstances that the words used by the trial court were intended to describe alimony in its technical sense, a modification is proper upon a showing of changed circumstances. See § 14–05–24, NDCC; *Hoster v. Hoster*, 216 N.W.2d 698 (N.D.

1974). We have said that remarriage makes out "a prima facie case which requires the court to end [alimony payments], in the absence of proof of some extraordinary circumstance justifying its continuance." *Nugent v. Nugent*, 152 N.W.2d 323, 327 (N.D.1967).

In this case the trial court's conclusion of law number 2 states:

"That the plaintiff is entitled to an equitable distribution of the properties of the parties acquired during the marriage, *and* alimony for life, or until remarriage." [Emphasis added.]

■ In number 8 of the trial court's findings of fact, the approximate net worth of the parties is set at $160,000.00, and in the order for judgment Sharon is awarded property with a value of approximately one-half of that net worth. From this we can only conclude that the trial court used the term alimony in its technical sense and not as a tool to accomplish a distribution of the property of the parties.

Sharon argues next that alimony should be nonterminable because it represents her interest in Ned's earning capacity, a capacity which developed, with her help, during the marriage. Because that argument is more consistent with the challenge to the property settlement, and because of what we have already said in regard to the order for alimony, we will discuss that argument when we consider the challenge to the property settlement.

■ Sharon also argues that, should this Court determine that the award of alimony is not part of the property settlement, the alimony termination should not come into play automatically upon her remarriage. She suggests that her remarriage should only provide a potential occasion for Ned to seek a termination of the alimony payments. We prefer the method chosen by the trial court. In *Nugent*, the reason given for seeking to have the alimony continued after the wife remarried was her second husband's inability to support her in the manner to which she was accustomed. The view was there taken that those facts

did not constitute such extraordinary circumstances as to justify the continuance of alimony or support payments. In the case at hand, no remarriage has taken place so no extraordinary circumstances can be set forth. Sharon only argues that she should be free to marry a "wonderful pauper." This assertion is clearly insufficient to meet the test of *Nugent*. See also, *Bingert v. Bingert*, 247 N.W.2d 464, 468 (N.D.1976).[1]

 The proponent of the continuance of alimony payments following remarriage carries a considerable burden. It would be a waste of judicial time to require the party who brings with him "a prima facie case" (see *Nugent, supra*) to act as the petitioner, yet leaving all of the burden on the respondent. Far better to leave Sharon to act as petitioner with the onus of seeking a modification of the decree based upon changed circumstances should she find herself contemplating a remarriage which might provide the extraordinary circumstances required by *Nugent*. See § 14–05–24, NDCC.

## II.

It is next contended that the division of property made by the trial court is inequitable and does not meet the requirements of § 14–05–24, NDCC.

 The finding of the value of the parties' property may be crucial to a resolution of the question of equitable distribution of that property. The trial court made no findings of fact with regard to the value of individual items of property, though there was some evidence of value of many of the significant items before the court.

 In this case, where much of the property is difficult to value, where there is a conflict in the evidence as to the value of some properties, where the only evidence as to the worth of other properties is a veiled hint that they are worthless because they are heavily financed, and where the evidence of the value of one property, the interest in Nastrom-Peterson Motors, Inc., is widely divergent even though all of that

evidence originated with Ned, we are provided with no sufficient basis for computing the property's value by any method other than guesswork. In *Roberson v. Roberson*, 296 Minn. 476, 206 N.W.2d 347 (1973), the Minnesota Supreme Court, in a per curiam opinion, remanded a similar case for the making of findings of fact in regard to the value of a business. We cannot apply that remedy because, as even a cursory glance at the record reveals, there is a paucity of evidence upon which to base those findings.

The efforts of the trial court to reach an equitable settlement of the parties' property interests appear to be based upon one of its findings of fact. That finding of fact, number 8, states: "That the present net worth of the parties is approximately One Hundred Sixty Thousand Dollars ($160,000.00)," and is said to be clearly erroneous.

 The *net worth* of the parties is found in the evidence in only one place, an unaudited statement of Ned's assets and liabilities compiled by the Minnesota accounting firm of Anderson & Seiberlich, certified public accountants. If this evidence is the basis for finding of fact number 8, the finding is necessarily clearly erroneous, without resort to a determination of its accuracy, because the following assets of the Nastroms' are nowhere mentioned:

1. Mobile home located near Tappen, North Dakota;
2. Ninety shares of stock in Nastrom Peterson Motors, valued at from $262 per share to $388 per share;
3. Twelve and one-half percent interest in Dick Fischer Motors of Glasgow, Montana;
4. Twenty-five percent interest in Dan Porter Motors of Dickinson, North Dakota;
5. A partnership interest in Northern Properties, holder of an undeveloped business lot in Williston, North Dakota;
6. Twenty-two and one-half percent interest in Triple A Corporation, a leasing enterprise.

1. In *Bingert* we not only reaffirmed *Nugent* but we also acknowledged the modern trend to

treat alimony as a method of rehabilitating the party disadvantaged by the divorce.

Findings of the trial court will not be disturbed unless they are found to be clearly erroneous. Rule 52(a), NDRCivP. We have said that a trial court's findings are clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973), The trial court relied upon a list of the parties' property which ignores certain items, some of which are clearly shown to have substantial value. The lack of necessary evidence to permit the court to make a correct finding is the responsibility of counsel, not of the court. It cannot be corrected by amended findings. Justice requires that additional evidence on property valuation be received.

Because there must be a new trial, we deem it appropriate to discuss the proposition, forcefully argued before this Court, that Sharon has some sort of property interest in the income-producing ability of Ned. This entrepreneurial ability of Ned is said to be an asset of the marriage which was contributed to by Sharon and which is, therefore, subject to consideration as a part of the division of property. This position was taken as a basis for seeking the continuance of alimony after remarriage. We have determined that the award of alimony in the manner ordered by the trial court was entirely proper. We therefore must determine if such property interest exists.

No cases have been cited by Sharon for this novel proposition, and we have found none in this jurisdiction or in any other. We have found cases from other jurisdictions wherein the value of something similar to Ned's entrepreneurial skills, the goodwill of a professional man, has been held to be property subject to division. See, i. e., *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *In re Marriage of Lukens,* 16 Wash.App. 481, 558 P.2d 279 (1976). The fact that professional goodwill may be difficult to evaluate has been held to not be a proper reason to ignore its existence. *In re Marriage of Lopez,* 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974). The lack of a market value for professional goodwill does not mean it is without value. *In re Marriage of Lukens, supra.* Goodwill should be measured by arriving at a present value based upon past results and not by accounting for the post-marital efforts of the professional spouse. *In re Marriage of Foster, supra,* 117 Cal. Rptr. at 54.

It must be remembered that California and Washington are jurisdictions which recognize the concept of community property. In California it is settled law that the efforts, time and skills of the husband are community assets. *Somps v. Somps,* 250 Cal.App.2d 328, 332–333, 58 Cal.Rptr. 304 (1967). In *Lopez, supra,* the California Court of Appeals remanded the case for a determination of which assets of the husband's law practice were community property, while instructing that goodwill be considered one asset of the practice.

Another community property state, Texas, has held that the goodwill of an ophthalmologist was not a property which would possess value or constitute an asset separate and apart from his person, or from his individual ability to practice his profession. *Nail v. Nail,* 486 S.W.2d 761, 52 A.L.R.3d 1338 (Tex.1972). The Texas Supreme Court thus held that professional goodwill was not community property.

In North Dakota the division of property decreed by the court is not subject to modification on grounds other than in the same manner and on the same grounds as other judgments. *Sinkler v. Sinkler, supra* ; *Sabot v. Sabot, supra.* Where alimony or support is decreed, the court retains jurisdiction to modify its judgment upon a showing of changed circumstances. *Hoster v. Hoster, supra.*

An Indiana case points up the primary difficulty involved in treating earning pow-

er[2] as an item of property. The wife of a tenured university professor sought to have the discounted future income of her husband included as a marital asset which might be distributed in the property settlement. The First District Court of Appeals of Indiana refused because "we cannot say that [the husband] has a vested present interest in his future earnings . . . ." *Wilcox v. Wilcox*, 365 N.E.2d 792, 794 (Ind. App.1977).

A review of the few cases on this subject leads us to the conclusion that the reasoning of the Indiana court is more correct where, as in the case before us, the potential future earnings, be they the result of a skill developed during marriage or otherwise, are much too tenuous to be a property right. It would be unjust to order the distribution of what is, at best, an expectancy, where that order would not be subject to modification should the expectancy fail to materialize. When the nature of the interest is such that the court must maintain its jurisdiction, distribution of the interest must take the form of alimony or support. Earning power (or the value of an entrepreneurial skill) is properly a consideration for the court. We have said so many times. *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966); *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977). Earning power is not, however, property that a court may divide as it would a parcel of land or a collection of household goods. Upon remand, the trial court will not be at liberty to place a value upon Ned's skills as an entrepreneur so as to distribute that value as property. We do not suggest that the court ignore Ned's earning power, but merely limit the form that the distribution of property may take. If the trial court should, at some future time, determine that changed circumstances warrant a different amount of alimony payment, Ned's income,

at that time, remains an appropriate subject of inquiry.

Lest we be misunderstood, nothing in this opinion should be taken as an indication that the goodwill of Ned's *business interests* should not be considered in determining the value of the parties' property, nor should this opinion be interpreted to mean that only an equal distribution of the property would be equitable. All of the *Ruff-Fischer* guidelines (*Ruff, supra*; *Fischer, supra*) should be applied, including consideration of the conduct of the parties. The division of property ordered by the district court is reversed, and the case is remanded for a new trial of the issue of property distribution alone; however, should the trial court deem that the property division influenced the alimony determination, that issue should also be retried.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

VOGEL, Justice, concurring in part and dissenting in part.

I concur in the remand to the district court and in parts of the opinion. With other parts of it, however, I cannot agree.

I

I approve of the majority's recognition that the wife is entitled to approximately half of the assets of the marital partnership. I cannot agree that her share can be given to her only as property division.

I have said before that one of the assets of any marriage may be the earning ability of one spouse, created in part by the contributions of the other during marriage. Those contributions may be made as a homemaker or otherwise. See dissent in *Hegge v. Hegge*, 236 N.W.2d 910 (N.D. 1975), and *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977). In the case before us, the wife was not only a homemaker, but also the bookkeeper and in charge of the finances of the marital partnership during the earlier years of the marriage while the

---

**2.** The term "earning power" is that used in the Ruff-Fischer guidelines found in *Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966). The value of the earning power is equivalent to the value of the "entrepreneurial skills." This is

not the same as "professional goodwill," as the term is used in the California, Washington and Texas cases cited in the body of this opinion, but is analogous thereto.

husband's earning ability was built up. The majority should recognize the wife's contribution toward the creation of that earning ability.

This is not a novel proposition. See cases cited in *Hegge* and *Haugeberg* dissents, *supra*, and in *Colley v. Colley*, 460 S.W.2d 821 (Ky.1970). A monograph by Doris Jonas Freed and Henry H. Foster, Jr., "Family Law in the Fifty States: An Overview," Fam.L.Rep. (BNA), Vol. 3, No. 43, September 6, 1977, 3 FLR 4047 at 4040, lists these 14 States which specifically give recognition to the role of a spouse as homemaker, parent, or contributor to the career of the other as a contribution to the assets of a marriage: Colorado, Delaware, Indiana, Kentucky, Maine, Michigan, Mississippi, Missouri, Montana, Nebraska, New Hampshire, Ohio, Pennsylvania, and Virginia.

## II

The earning ability of the parties is one of the *Ruff-Fischer* guidelines which we say we consider in every case. *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

Calling "earning ability" by a new name, such as "good will" or "entrepreneurial skills," does not alter the facts.

In my opinion, the earning ability of the husband (or wife) is an asset of the marriage and should be considered in making property division and alimony determinations. If the majority means to say that earning ability may be considered only in granting alimony, and not in making property division, it is creating an unjustified complication of a subject already too complex.

## III

I also dissent from the direction to the trial court that "conduct of the parties" should be considered upon remand. Both parties in this case asked for a divorce on the ground of irreconcilable differences, and the divorce was granted on that ground. This being so, I believe that the conduct of the parties is irrelevant to the granting of the divorce and to the questions of property division and alimony. See my dissent in *Hultberg v. Hultberg*, 259 N.W.2d 41 (N.D.1977), and see *In re Marriage of Williams*, 199 N.W.2d 339 (Iowa 1972), which discusses in depth the case law and scholarly articles on the question of whether fault is to be considered in division of property and alimony in cases where a divorce is granted on no-fault grounds, and concludes that fault should not be considered. And see monograph cited above which lists 11 States which expressly or impliedly exclude marital fault from consideration in awarding alimony or distributing property, and 12 States which regard marital fault as a discretionary factor which may be (but need not be) considered. Since some States probably have not ruled on the matter, I assume we are now in the minority.

## IV

For reasons which I have stated more fully in a dissent filed today in *Becker v. Becker*, 262 N.W.2d 478 (N.D.1977), I believe we have the statutory authority under Section 14–05–24, N.D.C.C., to modify property division in divorce cases after judgment is entered, just as we have authority to subsequently modify alimony and child-support provisions. The language of Section 14–05–24 is identical as to all three subjects, and judgments as to all three "may be modified from time to time."

I concede that we have a line of cases in this State holding to the contrary, as to property division only, starting with *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817 (1923). However, subsequent events have illustrated how difficult it is to follow that rule.

In *Hoster v. Hoster*, 216 N.W.2d 698 (N.D.1974), the parties entered into a "property settlement agreement" which included provisions for child support and alimony and custody. We approved changes as to alimony and child support in spite of the fact that the agreement was called a "property settlement agreement." In *Thompson v. Thompson*, 554 P.2d 1111 (Mont.1976), it was held that house payments are not ali-

mony, but instead are part of a property settlement, and in *Jones v. Flasted*, 544 P.2d 1231 (Mont.1976), it was held that a "property settlement" was really alimony.

In *Lawrence v. Lawrence*, 217 N.W.2d 792, 794 (N.D.1974), the judgment ordered payment of $90,000 at the rate of $500 per month, as "further property settlement, and not as alimony." Many lawyers use the terms "property settlement" and "alimony" interchangeably, especially in contexts involving lump-sums payments or payments of fixed sums in installments. Such payments may be property settlements, or alimony, or a mixture of both. How can we tell them apart? If labels govern, will it be malpractice for a lawyer to draft a settlement agreement which provides for no alimony, thereby making it impossible to obtain any in later years regardless of circumstances? [See *Becker v. Becker, supra*.] Will it be reversible error for a trial judge to make findings of fact, conclusions of law, and orders for judgment which do not mention alimony and thereby preclude future alimony? [See *Gagliano v. Gagliano*, 215 Va. 447, 211 S.E.2d 62 (1975).] Will it be reversible error for a judge to call monthly payments "property division," as in *Lawrence v. Lawrence, supra*, and thereby preclude subsequent modification?

I would prefer to reverse the flat prohibition against modification of property awards and hold, in compliance with the plain language of Section 14–05–24, N.D. C.C., that property divisions, as well as alimony and child-support provisions in judgments, are subject to modification for changed circumstances at any time.