**Donna BAUER (now Oltmanns), Plaintiff and Appellee,**

v.

**Gary L. BAUER, Defendant and Appellant.**

**Civ. No. 10671.**

Supreme Court of North Dakota.

Oct. 30, 1984.

898

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for plaintiff and appellee; argued by Richard A. Ohlsen, Grand Forks.

Thomas B. Jelliff, Grand Forks, for defendant and appellant.

GIERKE, Justice.

Gary Bauer has filed an appeal from an order denying his request to terminate his alimony obligation to his former wife, Donna (Bauer) Oltmanns. We affirm in part and reverse in part.

The original divorce decree was entered as a result of a stipulated agreement by the parties. Under that decree, Gary was obligated to pay Donna "$50.00 per month as and for alimony for life." The decree also provided that if Donna commenced a program of higher education within five years Gary was obligated to pay, as additional alimony, all of Donna's school expenses for a maximum period of seven school years. It is undisputed that the foregoing "alimony" constitutes an obligation for payment of spousal support and not for payment as part of a property division.

Donna remarried approximately ten months after her divorce from Gary. Thereafter, Gary filed a motion requesting the district court to modify the original divorce decree, asserting that Donna's remarriage was a change of circumstances warranting a termination of Gary's alimony obligations. The district court entered an order denying Gary's motion from which he has filed this appeal.

Proof that the spouse receiving spousal support payments has remarried establishes a *prima facie* case requiring the court to terminate the support payments unless there are extraordinary circumstances which justify continuance of the payments. *Nugent v. Nugent,* 152 N.W.2d 323 (N.D.1967); *see also Seablom v. Seablom,* 348 N.W.2d 920 (N.D.1984); *Nastrom v. Nastrom,* 262 N.W.2d 487 (N.D.1978). The district court determined that there were extraordinary circumstances justifying the continuance of Gary's support payments to Donna "evidenced by the disparity of education between the parties upon leaving the marriage and the docu-

mented contemplation of the parties that this disparity be made up to [Donna]."

The parties agree that the proper standard of review is the clearly erroneous standard under Rule 52(a), N.D.R.Civ.P.

Gary's support payments to Donna constitute two separate parts: (1) spousal support of $50 per month, and (2) payment of Donna's school expenses for her to receive a post high school education. We conclude that the trial court's finding of extraordinary circumstances justifying the continuance of the $50 per month spousal support payments after Donna's remarriage is clearly erroneous. We further conclude, however, that the trial court's finding that there are extraordinary circumstances which justify the continuation of Gary's obligation to pay Donna's education expenses after her remarriage is not clearly erroneous.

In *Nugent*, the movant (Milton) requested the district court to terminate his spousal support obligation to his ex-wife (Doris) on the ground that she had remarried. The district court refused to terminate the obligation but reduced the payments from one-third to one-sixth of Milton's gross monthly income. On appeal, this Court determined that there were not extraordinary circumstances which would justify the continuance of Milton's spousal support obligation to Doris subsequent to her remarriage.

In *Nugent*, Doris asserted that the following facts constituted extraordinary circumstances justifying her continued receipt of spousal support payments from Milton: (1) Milton was at fault and was solely responsible for the divorce which destroyed their marriage; (2) Milton acquired a medical degree during their marriage while Doris contributed to their livelihood so that Milton might continue his medical education, including specialized training; and (3) The man Doris remarried earned approximately one-half of Milton's annual salary, had children of his own to support, and had medical expense obligations which placed him in a financial condition under which he could not support Doris in the manner in which she was supported by Milton.

This Court concluded, in a unanimous decision written by Chief Justice Erickstad:

"[W]e do not believe that such factors constitute such extraordinary circumstances as would justify the continuance of the alimony payments in this case, Doris having voluntarily elected to marry another, who now must assume the responsibility for her support." *Nugent, supra*, 152 N.W.2d at 329.

The similarity of the facts existing in this case with those in *Nugent, supra*, leads us to conclude that there are not extraordinary circumstances which would justify the continuance of Gary's $50 per month spousal support payments to Donna. The district court's finding to the contrary, based upon a disparity of education between Gary and Donna, is clearly erroneous.

While conceding that the district court retains jurisdiction to modify spousal support payments, Donna nevertheless asserts that, because the original divorce decree was based upon a stipulated agreement and because it provided for "alimony for life", Gary should not be allowed to terminate his obligation to make those payments by court ordered modification of the decree. We disagree.

The provision that Donna would receive support payments "for life" is a statement that the payments would not continue after Donna's death. That statement indicates, as the parties have conceded, that the payments were intended as spousal support and not as a form of property division. *See, Seablom v. Seablom*, 348 N.W.2d 920 (N.D.1984). Giving additional meaning to that language in the divorce decree is not warranted by the record or by the decree itself.

■ Unlike the fact situation in *Nugent*, Gary and Donna stipulated that Gary would pay Donna's school expenses for her to attend a program of higher education. In that manner, the parties recognized a disparity of education between them which developed during the course of their marriage, and they expressly agreed that Gary would pay Donna's school expenses to compensate her for that disparity of education.

We cannot conclude that the trial court was clearly erroneous in finding that Gary's stipulated agreement to pay for Donna's school expenses constituted an extraordinary circumstance justifying the continuance of those payments after Donna's remarriage.

In accordance with this opinion, we affirm that part of the trial court's order which continues Gary's obligation to pay Donna's school expenses and we reverse that part of the order denying Gary's request to terminate his obligation to pay the $50 per month spousal support payments.

ERICKSTAD, C.J., and SAND and VANDE WALLE, JJ., concur.

SAND, Justice, specially concurring.

I signed the opinion primarily on the basis that the parties agreed that the $50.00 monthly alimony payments "for life" constituted spousal support rather than a form of property division or a quasi annuity. I do not consider the education agreement to be in the same category with the $50.00 monthly payment. Even though on previous occasions I have signed opinions on the same issue, nevertheless, because of the perplexing anomalies which are giving me concern I make additional comments and observations.

Generally, contracts or agreements entered into free of duress, fraud, mistake, or undue influence are vigorously upheld by the courts. But in divorce actions the contracts or agreements, even though they must be and are approved by the court are not given the same stature. Could this be the result of the lax attitude society has developed regarding the original contract, "vows" or agreement?

I do not have any concern with modifying agreements or contracts involving child support and custody which involve the best interest of the child rather than the parties and changed circumstances.

My concern relates to spousal support for a specific period of time or for life without any qualifications or limitations such as remarriage or sickness, etc. During my service on the Court its powers have been invoked frequently to reduce or eliminate spousal support because of changed circumstances. During this time I do not recall having had a request to increase the payment because of changed circumstances, such as sickness of the unremarried recipient. I would not be surprised that in such circumstances the paying party would make strong persuasive arguments that the contract or agreement entered into controlled and the request for increased payments should be denied.

The use of the term "alimony" without any qualification or identification of its purpose which we criticized in *Lipp v. Lipp*, 355 N.W.2d 817 (1984) also gives me some concern. I am convinced that the term "alimony" is used to take due or undue advantage of certain income tax provisions.

PEDERSON, Justice, dissenting.

Public policy is not static and appellate court judges are more isolated from changes than trial court judges. It may have been obvious in 1967, when *Nugent* was decided, that the public policy made it unacceptable for one man to support another man's wife. Although my standards have not changed, there are numerous indications that public standards have. When the parties in this case, in 1982, agreed to "alimony for life" of $50.00 per month, both parties being charged with knowledge of the law, they were displaying a change in public policy. I would agree that the trial court could have better articulated "findings of fact" which explained the basis for the decision that "extraordinary circumstances" were present, but that relates to training of judges and should not control the outcome of a lawsuit. This case, in my opinion, is a Rule 52(a), NDRCivP, case and we should affirm.