2017 ND 17

**Sandra A. GLASS, Plaintiff and Appellant**

v.

**James K. GLASS, Defendant and Appellee**

**No. 20160112**

Supreme Court of North Dakota.

Filed 2/16/2017

David A. Garaas, 1314 23rd Street South, Fargo, N.D. 58103–3796, for plaintiff and appellant.

Patti J. Jensen, P.O. Box 386, East Grand Forks, MN 56721–0386, for defendant and appellee.

VandeWalle, Chief Justice.

[¶ 1] Sandra Glass–Lenertz appealed from an amended judgment terminating James Glass's spousal support obligation to her. We affirm, concluding the district court did not abuse its discretion in terminating spousal support as of the date of Lenertz's remarriage in 2002.

I

[¶ 2] Lenertz and Glass divorced in 1996. The divorce judgment required Glass to pay Lenertz $1,700 per month in spousal support. The judgment states Glass's spousal support obligation ceases upon either party's death. The spousal support provision of the judgment is silent regarding Lenertz's remarriage.

[¶ 3] Lenertz remarried in September 2002. Glass did not pay any spousal support until 2001. Between the date of the divorce and Lenertz's remarriage, Glass accrued $117,300 in spousal support payments to Lenertz. In 2001 and 2002, Glass paid Lenertz $23,000 in spousal support. Between 2002 and July 2015, Glass paid Lenertz $94,300 in spousal support, the remainder of the $117,300 owed. Glass did not pay any interest on the past due amounts.

[¶ 4] In July 2015 Glass moved to terminate his spousal support obligation, arguing it terminated on the date of Lenertz's remarriage. After a November 2015 hearing, the district court concluded Glass's spousal support obligation terminated on the date of Lenertz's remarriage in September 2002. The court also found Lenertz was entitled to $26,903.37 of interest on the unpaid spousal support that accrued between the date of the divorce and her remarriage.

II

[¶ 5] Lenertz argues the district court exceeded its statutory authority by retroactively terminating her spousal support as of the date of her remarriage.

[¶ 6] Spousal support is governed by N.D.C.C. § 14–05–24.1. This statute was amended effective August 1, 2015, and states permanent spousal support terminates upon the remarriage of the former spouse receiving support. N.D.C.C. § 14–05–24.1(2). Lenertz remarried and Glass moved to terminate his spousal support obligation before the amendment and neither party argues the amended statute applies here. See Klein v. Klein, 2016 ND 153, ¶ 12, 882 N.W.2d 296 (N.D.C.C. § 14–05–24.1 as amended applies prospectively, not retroactively).

[¶ 7] The version of N.D.C.C. § 14–05–24.1 in effect in this case provided:

Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time.

The court may modify its spousal support orders.

[¶ 8] This Court has addressed remarriage of a former spouse receiving spousal support under this version and earlier versions of N.D.C.C. § 14–05–24.1. Although earlier versions of N.D.C.C. § 14–05–24.1 are silent regarding remarriage, we have held numerous times that remarriage creates a prima facie case to terminate permanent spousal support unless extraordinary circumstances exist to justify its continuance. Pearson v. Pearson, 2000 ND 20, ¶ 7, 606 N.W.2d 128; Cermak v. Cermak, 1997 ND 187, ¶ 6 n.1, 569 N.W.2d 280 ("Even without a specific provision in the divorce decree, permanent spousal support may terminate upon the remarriage of the recipient spouse unless the recipient shows extraordinary circumstances."); Wiege v. Wiege, 518 N.W.2d 708, 712 (N.D. 1994); Ramsdell v. Ramsdell, 454 N.W.2d 522, 524 (N.D. 1990); Roen v. Roen, 438 N.W.2d 170, 173 (N.D. 1989); Rustand v. Rustand, 379 N.W.2d 806, 807 (N.D. 1986); Bauer v. Bauer, 356 N.W.2d 897, 898 (N.D. 1984); Seablom v. Seablom, 348 N.W.2d 920, 924 (N.D. 1984); Nastrom v. Nastrom, 262 N.W.2d 487, 490 (N.D. 1978); Bingert v. Bingert, 247 N.W.2d 464, 468 (N.D. 1976); Nugent v. Nugent, 152 N.W.2d 323, 324 (N.D. 1967).

[¶ 9] This Court first held that remarriage creates a prima facie case to terminate permanent spousal support in Nugent, 152 N.W.2d at 327. In Nugent, the parties divorced in July 1964 and the wife remarried in October 1965. Id. at 325. Approximately one month after the wife's remarriage the husband moved to terminate his spousal support obligation, which was denied. Id. at 327. This Court adopted the rule that remarriage creates a prima facie case to terminate spousal support absent extraordinary circumstances. Id.

[¶ 10] Nugent also addressed whether a trial court has the power to cancel spousal support arrears accrued after a former spouse's remarriage; in other words, "whether there may be a retrospective modification or termination of installments of alimony which have accrued following the remarriage of the [recipient spouse]." 152 N.W.2d at 329. This Court answered in the affirmative and held a trial court may grant a retroactive modification or termination of spousal support upon the remarriage of the recipient spouse:

> We are of the opinion that the determination of whether [spousal support] payments should be terminated when a divorced [spouse] has remarried, and, if so, when, is within the sound discretion of the trial court; and that unless there is a showing of abuse of this discretion, the trial court's decision will not be reversed on appeal.

Id. "A district court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." Larson v. Larson, 2016 ND 76, ¶ 32, 878 N.W.2d 54 (quoting Anderson v. Baker, 2015 ND 269, ¶ 7, 871 N.W.2d 830).

[¶ 11] In this case the district court found Lenertz did not demonstrate extraordinary circumstances to justify the continuance of spousal support after her remarriage in September 2002:

> Here, due to Sandra's remarriage, the Court can terminate her spousal support unless she can establish extraordinary circumstances justifying continuation of the support. Based upon the evidence submitted, the Court is not persuaded that such extraordinary circumstances exist in this case. From 2002 until 2014, Sandra and her husband, Thomas Len-

ertz ("Thomas"), averaged $89,663.00 per year in income, according to their tax returns. Further, Thomas earned over $50,000.00 through July 2015, according to his paystub for Cargill Incorporated. Moreover, the home Sandra and Thomas live in was appraised at $575,000.00 as of October 22, 2015, and it is not subject to a mortgage. Sandra no longer has minor children to support, as all of the parties' children have reached the age of majority. Further, there is no dispute that James has paid all of his child support obligations. Sandra has not asserted any other facts that would justify continuance of spousal support. Accordingly, Sandra has not demonstrated any financial need, let alone a need rising to the level of extraordinary circumstances.

[¶ 12] Lenertz testified there were extraordinary circumstances from the time of her remarriage until about a year after the parties' youngest child graduated high school in 2011. She testified the extraordinary circumstances were primarily the cost of raising the parties' four children in the marital home. Under the divorce judgment, Lenertz received all of the parties' real property interests including the marital home. She testified she has lived there since the divorce in 1996. The house has an appraised value of $575,000 and is not encumbered by a mortgage. Lenertz was awarded primary residential responsibility of the parties' four children. The judgment required Glass to pay $1,050 each month in child support and Lenertz testified Glass fulfilled his child support obligation. She testified she has no debt.

[¶ 13] The district court retroactively terminated Glass's spousal support obligation as of Lenertz's remarriage in September 2002. The primary difference between this case and Nugent is the timing of the husband's motion to amend the judgment to terminate spousal support. In Nugent, the former husband moved to amend the judgment shortly after the remarriage. 152 N.W.2d at 326. Glass moved to terminate spousal support nearly 13 years after Lenertz's remarriage. This Court in Nugent addressed the timing of the husband's motion:

An important factor contributing to our conclusion in this case is that Milton made a timely motion to amend the judgment when he was in no manner in default [on spousal support payments], and although he failed to appeal from the order which denied that first motion, we believe that he should not be penalized for his failure under the circumstances of this case, wherein we have found that there are no extraordinary circumstances which justify the continuance of the alimony payments.

Id. at 329.

[¶ 14] Although we stated the timing of the husband's motion was an important factor in Nugent, we did not hold a trial court may terminate spousal support only upon a timely motion. We held spousal support may be terminated upon remarriage unless extraordinary circumstances exist to justify its continuance, and the decision as to when spousal support terminates lies within a trial court's discretion. Id. at 329.

[¶ 15] Here, although Glass would have been prudent to file his motion sooner, the lapse of time between Lenertz's remarriage and Glass's motion did not appear to affect the district court's decision to terminate spousal support as of the date of Lenertz's remarriage. Glass paid Lenertz $117,300 in spousal support owed to her between the date of the divorce and her remarriage. He paid a majority of that amount after it accrued and after Lenertz remarried. As a result, the court awarded Lenertz $26,903.37 in interest on the un-

paid spousal support that accrued between the date of the divorce and her remarriage. On this record, the evidence supports the court's findings that no extraordinary circumstances exist to continue spousal support, and we cannot conclude the court abused its discretion in terminating Glass's spousal support obligation as of the date of Lenertz's remarriage.

## III

 [¶ 16] Lenertz argues accrued and unpaid spousal support payments are "vested" property rights that are constitutionally protected from retroactive modification to the date of her remarriage. Lenertz cites Weldy v. Weldy, 74 N.D. 165, 180–81, 20 N.W.2d 583, 590–91 (1945), and Richter v. Richter, 126 N.W.2d 634, 635 (N.D. 1964), to support her argument. Those cases do not apply here. Richter and Weldy do not involve remarriage and were decided before Nugent. In Nugent, 152 N.W.2d at 329, this Court recognized its holding created an exception to Richter: "we recognize that remarriage of a wife who has been awarded alimony payments creates an exception to what we said in Richter v. Richter, 126 N.W.2d 634, 635 (N.D. 1964), to the effect that a divorce decree cannot be modified as to accrued but unpaid alimony." Additionally, to the extent Lenertz attacks the constitutionality of N.D.C.C. § 14–05–24.1 relating to spousal support, she has not provided notice to the attorney general as required under N.D.R.App.P. 44. We decline to address Lenertz's constitutional argument.

## IV

[¶ 17] We have considered Lenertz's remaining arguments and conclude they are either unnecessary to our decision or without merit. The amended judgment terminating spousal support is affirmed.

[¶ 18] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom, S.J.

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

[¶ 19] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.