**Earl Grant COULTER, Plaintiff and Appellee,**

v.

**Donna Jean COULTER, Defendant and Appellant.**

Civ. No. 10189.

Supreme Court of North Dakota.

Dec. 17, 1982.

David Kessler, Grand Forks, for defendant and appellant.

Pearson & Christensen, Grand Forks, for plaintiff and appellee; argued by Douglas A. Christensen, Grand Forks.

PAULSON, Justice.

Donna Jean Coulter appeals from an order of the District Court of Traill County dated April 7, 1982, which attempted to clarify *nunc pro tunc* a previous order dated September 8, 1975, approving a stipulation and agreement between the parties. The April 7, 1982, order attempted to make clear whether the settlement approved September 8, 1975, provided for alimony in the nature of spousal support or for a type of property division. The district court determined that the payments provided for were alimony in the nature of support subject to the terms and limitations of § 14–05–24 of the North Dakota Century Code. We reverse.

Donna Jean Coulter [Donna] and Earl Grant Coulter [Grant] were divorced on July 19, 1962. At that time both parties signed a stipulation, the pertinent terms of which were incorporated into the .1962 di-

vorce judgment. In addition to dividing the property and providing for child support payments, the 1962 judgment decreed that Grant pay to Donna "the sum of Four Hundred Dollars ($400.00) per month alimony, to be paid to the defendant [Donna] on or before the 1st day of August, 1962, and the first day of each month thereafter so long as the defendant [Donna] shall live and remain unmarried". Following the entry of judgment Grant and Donna complied with the terms of the property settlement. Grant made all of the necessary child support payments until the time the children achieved the age of majority. Grant also paid Donna the sum of $400.00 per month in accordance with the terms of the divorce judgment.

Thirteen years after the divorce, with a motion dated May 29, 1975, Donna sought to modify the 1962 divorce judgment. Alleging changed circumstances, Donna sought an increase in the amount of monthly alimony payments from $400.00 per month to $1,200.00 per month. In order to resolve the issue raised in Donna's motion, the parties entered into an "Agreement and Stipulation" dated September 3, 1975, and signed by the parties and their attorneys, which reads, in pertinent part, as follows:

### "I

#### "RECITALS

"The defendant [Donna] has filed a motion seeking an increase in alimony payments originally ordered in that divorce decree dated July 19, 1962. In order to resolve the issue raised in that motion, as well as to finally determine and satisfy all obligations arising out of the marital relationship between the parties,

"IT IS AGREED as follows:

"In lieu of all further payments of alimony, support or any other sum from any other source except as set forth below in

Paragraph II, plaintiff [Grant] shall pay to defendant [Donna] the total sum of $60,000 as follows:

"$12,000 at the time of this agreement, and $12,000 on September 3 of each succeeding year, together with simple interest thereon at the rate of 7 per cent per annum, until paid. The defendant [Donna] shall prepare a non-negotiable promissory note to further identify these terms.

### "II

"Plaintiff [Grant] agrees to maintain insurance in the amount of $40,000 coverage as required by the original divorce decree referred to above, that is, a $40,000 policy without encumbrance on the life of the plaintiff [Grant] payable to defendant [Donna] as primary beneficiary so long as she is living and remains unmarried and with the two children and the survivor of them as contingent beneficiaries in case of the death or remarriage of the defendant [Donna].

### "III

"Each party shall be responsible for his or her own counsel fees in this proceeding.

### "IV

"This agreement shall constitute a full and complete satisfaction of all the obligations of either party to the other arising out of the marital relationship and each party forever releases, quitclaims and discharges the other party from any such obligation except as set forth in this agreement."

The terms of the stipulation were incorporated into an Order Approving Stipulation and Agreement dated September 8, 1975.[1]

---

1. The pertinent part of the "Order Approving Stipulation and Agreement" dated September 8, 1975, reads as follows:

"IT IS ORDERED AND ADJUDGED that Judgment be entered for the Defendant in accordance with the terms of the Stipulation and Agreement, those terms being:

"That in lieu of all future payments of alimony, support, or any other sum from any source except as set forth below, Plaintiff shall pay to Defendant the total sum of Sixty

Grant subsequently made the payments according to the terms of the order. However, there was a misunderstanding as to the nature of the payments made pursuant to the 1975 order. Donna believed the payments to be part of a nontaxable $60,000 cash property settlement and, therefore, did not include the payments as income on her federal income tax return. Grant believed the payments to be alimony in the nature of support and therefore deducted the $12,000 annual payments from his income on his returns.

Upon audit of both the parties' income tax returns, the Internal Revenue Service [IRS] could not determine whether the payments were alimony in the nature of support or a type of property division. In order to assure that the proper income tax was paid by the appropriate party, the IRS took inconsistent positions as to Donna and Grant, requiring Donna to treat the payments she received as alimony income and disallowing Grant an alimony deduction for the payments made.

In an attempt to clear up the ambiguity of the September 8, 1975, order and to determine whether the payments made pursuant to that order were alimony payments in the nature of support or a type of property settlement, Grant filed a motion to amend the judgment, which motion requested a declaratory judgment that the payments made pursuant to the September 8, 1975, order were alimony and, further, that such payments be subject to termination upon Donna's death. In the alternative, Grant moved to modify the September 8, 1975, order pursuant to Rule 60(a) and 60(b) of the North Dakota Rules of Civil Procedure. In a responsive pleading, Donna requested attorney fees and moved for a judgment on the pleadings pursuant to Rule 12(c), N.D.R.Civ.P., and for summary judgment pursuant to Rule 56, N.D.R.Civ.P. In the alternative, Donna moved for a reinstatement of alimony payments.

Prior to a hearing on the motions, with the consent of both parties, the district court amended Grant's motion from a request for a declaratory judgment to a motion to clarify the September 8, 1975, order *nunc pro tunc.* Grant's motion under Rule 60, N.D.R.Civ.P., and Donna's motions for summary judgment, attorney fees, and for reinstatement of alimony remained unaltered to be heard by the court.

On November 6, 1981, a hearing was held on the parties' motions. After hearing the arguments of the parties, the district court denied all of Donna's motions, denied Grant's motion for relief pursuant to Rule 60, N.D.R.Civ.P., ordered each party to pay their own attorney fees, and amended the order of September 8, 1975, *nunc pro tunc* so that the amended order clearly stated that the payments made pursuant to the September 8, 1975, order were alimony in the nature of spousal support as provided for by § 14–05–24, N.D.C.C.

Findings of fact and conclusions of law were prepared and an Amended Order Approving Stipulation and Agreement Dated September 8, 1975 (Amended Judgment), was issued by the court on April 7, 1982. From this order Donna appeals.

Donna has raised the following issues on appeal:

(1) Whether or not the sole issue in this matter is one of federal income taxation over which the district court could not properly exercise its jurisdiction.

Thousand and NO/100 ($60,000) Dollars as follows: $12,000.00 at the time of this Agreement, and $12,000.00 on September 3rd, of each succeeding year, together with simple interest thereon at the rate of seven per cent (7%) per annum, until fully paid.

"Plaintiff agrees to maintain insurance in the amount of $40,000.00 coverage as required by the original divorce Decree dated July 19th, 1962, that is a $40,000.00 policy without encumbrance on the life of the Plaintiff payable to Defendant as primary benefi-

ciary so long as she is living, and remains unmarried, and with the two children and the survivor of them as contingent beneficiaries in case of the death or re-marriage of the Defendant.

"IT IS FURTHER ORDERED that this Agreement shall constitute a full and complete satisfaction, compromise, and discharge of all the claims and demands, actions and causes of action, which either party has or may have against the other by reason of all matters in dispute in this proceeding.

(2) Whether or not the district court properly issued findings of fact and conclusions of law in this matter.

(3) Whether or not the district court erred when it denied Donna's motions for a judgment on the pleadings, for summary judgment, for reinstatement of alimony, and for attorney fees.

(4) Whether or not the district court abused its discretion in amending the September 8, 1975, Order Approving Stipulation and Agreement *nunc pro tunc*.

(5) Whether or not the district court erred when it concluded that the payments made pursuant to the September 8, 1975, order were alimony in the nature of support rather than a type of property settlement.

■ Donna contends that the district court had no jurisdiction to hear Grant's motions because the sole issue involved was one of federal income taxation. We disagree.

In *Briese v. Briese*, 325 N.W.2d 245, 248 (N.D.1982), this court stated:

"Federal tax matters are generally not within the jurisdiction of the courts which have jurisdiction over domestic matters. *Fraase v. Fraase*, 315 N.W.2d 271, 278 (N.D.1982) (Sand, J., special concurrence).... This court will not speculate as to the possible outcome of a federal tax matter over which we have no jurisdiction."

In the instant case, the district court was not deciding a federal tax matter. The court was attempting to resolve an ambiguity in the order of September 8, 1975, concerning the nature of the payments made pursuant to that order. Whether the payments were alimony in the nature of spousal support or a type of property division is a matter which should have been clearly set forth in the order of September 8, 1975. By issuing its amended order on April 7, 1982,

the district court was attempting to clarify the nature of the payments awarded in the September 8, 1975, order.

The fact that a determination by a court of this State may subsequently be presented to a federal tax court in an attempt to influence a federal tax decision does not deny the state court jurisdiction to hear that matter. To hold otherwise would be to deny jurisdiction to the courts of this State in every divorce proceeding as there are income tax consequences involved in every divorce. Because the district court was attempting to clarify the September 8, 1975, order concerning the nature of the payments made pursuant to that order and because, in doing so, the district court was not deciding a federal tax matter, the district court properly exercised its jurisdiction in this matter.

■ Donna's next contention is that the district court should not have issued findings of fact and conclusions of law in this matter following the November 6, 1981, hearing on the motions. Donna argues that because all of the issues raised at the November 6, 1981, hearing were by motion, Rule 52(a), N.D.R.Civ.P., made the preparation of findings of fact and conclusions of law unnecessary.[2] Donna further asserts that there is a complete lack of evidence upon which the court could base its findings because the only testimony allowed at the hearing was the contradictory testimony of Donna and Grant.

Rule 52(a), N.D.R.Civ.P., provides in pertinent part that:

"*(a) Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment .... Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court

---

2. The last sentence of Rule 52(a), N.D.R.Civ.P., states that:

"Findings of fact and conclusions of law are unnecessary on decisions of motions un-

der Rules 12 or 56 or any other motion except as provided in Rule 41(b).

to judge of the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

In *Reub's Minot Camera, Inc. v. General Elec. Credit Corp.,* 209 N.W.2d 635, 638 (N.D.1973), this court stated:

"Though findings of fact may not be required for decisions on motions, they are recommended. In Wright & Miller, Federal Practice and Procedure: Civil § 2575, at page 694, we find this language:

" 'Indeed, regardless of what the rule in terms requires, whenever decision of a matter requires the court to resolve conflicting versions of the facts, findings are desirable and ought to be made.' "

Additionally, when a motion necessitates the resolution of conflicting evidence, the proceeding is "an action tried upon the facts", making Rule 52(a), N.D.R.Civ.P., applicable. *Voth v. Voth,* 305 N.W.2d 656, 658 (N.D.1981).

Though findings of fact and conclusions of law may have been unnecessary on the district court's decision denying Donna's motions for relief under Rules 12 and 56, N.D.R.Civ.P., they were nonetheless properly made. Furthermore, because factual determinations were necessarily involved in the decisions to deny Grant's motion for relief pursuant to Rule 60, N.D.R.Civ.P., and Donna's motion for reinstatement of alimony, the proceeding was "an action tried upon the facts" in which "the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment". Rule 52(a), N.D.R.Civ.P.

No opinion or memorandum decision was filed in this case. Even though the testimony of Donna and Grant was contradictory, in reviewing findings of fact based upon conflicting testimony, due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52(a), N.D.R.Civ.P. The district court in this case did not, as Donna asserts, base its findings solely on testimony of Donna and Grant. The court had before it the record from the 1975 proceedings in this matter as well as letters, affidavits, and various papers filed in the instant proceeding prior to the November 6, 1981, hearing.

Donna does not specify which of the court's findings of fact and conclusions of law are erroneous. Instead, she objects to all of the findings and conclusions and asserts that findings of fact and conclusions of law were not properly issued in this case. Our review of the record and the applicable law indicates that her position is incorrect. Findings of fact and conclusions of law were properly issued by the district court in the instant case.

Donna contends that the district court erred when it denied her motions for a judgment on the pleadings pursuant to Rule 12(c), N.D.R.Civ.P.; for summary judgment pursuant to Rule 56, N.D.R.Civ.P.; for reinstatement of alimony; and for attorney fees. We can find no error in the district court's denial of these motions.

The district court found that a genuine issue of material fact existed as to whether the payments made pursuant to the order of September 8, 1975, were intended as alimony in the nature of spousal support or as a type of property division. Because an issue of material fact existed, the district court did not err when it denied Donna's motions for a judgment on the pleadings and for summary judgment. Rule 56(c), N.D.R.Civ.P.

In denying Donna's motion for reinstatement of alimony payments, the district court concluded that Donna had not shown any material change of circumstances which would require additional alimony to be paid to her. Upon review of the record, we find no error in this conclusion.

The district court also denied Donna's motion for attorney fees and ordered

that each party bear the cost of their own attorney fees. In the absence of an agreement between the parties, the decision to award attorney fees is within the sound discretion of the trial court and, absent an abuse of discretion, will not be disturbed on appeal. § 28–26–01, N.D.C.C. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *O'Conner v. Northern States Power Co.,* 308 N.W.2d 365 (N.D.1981). The record indicates that the district court considered Donna's claim for attorney fees and then decided that each party should bear the cost of their own attorney fees. The action of the district court in denying Donna's claim for attorney fees was not arbitrary, unreasonable, or unconscionable and, therefore, was not an abuse of discretion, and, thus, the decision denying Donna's claim for attorney fees will not be disturbed on appeal.

■ Donna's next contention is that the district court abused its discretion when it amended the September 8, 1975, Order Approving Stipulation and Agreement *nunc pro tunc.* Grant had initially requested a declaratory judgment seeking to amend the order of September 8, 1975, by having the payments made pursuant to that order declared to be alimony subject to termination upon Donna's death, pursuant to the provisions of § 14–05–24, N.D.C.C. Prior to a hearing on Grant's declaratory judgment motion, the district court, with the consent of both parties, amended Grant's motion from a request for a declaratory judgment to a *nunc pro tunc* motion to clarify the district court's order dated September 8, 1975. The court reasoned that, although the declaratory judgment procedure requested by Grant is not necessarily an improper method, the *nunc pro tunc* motion is more specifically structured for the purpose of interpreting and clarifying a provision of a prior judgment or order.

In *Aabye v. Aabye,* 292 N.W.2d 92, 94 (N.D.1980), this court stated:

"The purpose of nunc pro tunc proceedings is to make the record speak the truth and to allow a court to correct its records until they contain a true history of the court's transactions. *Enderlin Farmers' Store Co. v. Witliff,* 56 N.D. 380, 217 N.W. 537 (1928). . . .

"The test of whether or not an amendment nunc pro tunc is permissible has been stated as follows:

" 'The test is whether on the one hand the change will make the record speak the truth as to what was actually determined or done by the court, or whether, on the other hand, it will alter such action or intended action.' *State v. District Court of Fifth Judicial Dist.,* 110 Mont. 36, 98 P.2d 883, 885 (1940).

"As stated by the Minnesota Supreme Court, 'The office of such a nunc pro tunc entry is correctly to record, *not to supply* judicial action.' [Emphasis in original.] *Wilcox v. Schloner,* 222 Minn. 45, 23 N.W.2d 19, 22 (1946); and by the Wisconsin Supreme Court, 'A court cannot modify or amend its judgment to make it conform to what the court ought to have or intended to adjudge.' *In re Gibson's Estate,* 7 Wis.2d 506, 96 N.W.2d 859, 864 (1959).

"In order to justify and assure that in correcting or amending a judgment the court is not altering what was intended to be done, there must be support therefor from the pleadings, or from the record of the decree, or from the clerk's minutes, or from the minutes or notations kept by the judge, or from the transcript, or from some proper paper or file in the case. *Wiggins v. Perry,* 343 Mo. 40, 119 S.W.2d 839 (1937); or upon satisfactory evidence, parol as well as written. *Bush v. Bush,* 158 Kan. 760, 150 P.2d 168 (1944)."

In the instant case, the district court ordered that those lines 24 through 30 of the Order Approving Stipulation and Agreement dated September 8, 1975, which read:

"That in lieu of all future payments of alimony, support, or any other sum from any source except as set forth below, Plaintiff shall pay to Defendant the total sum of Sixty Thousand and NO/100 ($60,-000.00) Dollars as follows: $12,000.00 at

the time of this Agreement, and $12,-000.00 on September 3rd, of each succeeding year, together with simple interest thereon at the rate of seven per cent (7%) per annum, until fully paid."

be amended to read as follows:

"That the plaintiff Earl Grant Coulter shall pay to the defendant Donna Jean Coulter as alimony subject to the terms and limitations of NDCC 14–05–24 the sum of $12,000 a year for a period of five years. To further identify said alimony and support obligation the plaintiff shall give to the defendant a promissory note which shall provide that said payments shall be paid as follows: $12,000 on or before the 3d day of September, 1975 and the remaining four yearly payments of $12,000 shall be paid on the 3d day of September each year thereafter, together with interest on the unpaid principal balance of $48,000 at the rate of seven (7) per cent per annum."

The remaining provisions of the September 8, 1975, order were not altered by the amended order of April 7, 1982.

A *nunc pro tunc* order is available in some cases to amend judgments containing mistakes of a purely clerical nature. *Suko v. Suko,* 304 N.W.2d 690, 693 n. 1 (N.D. 1981). By amending the September 8, 1975, order as it did, the district court was not correcting a clerical error but was altering the order entered previously. A review of both the September 3, 1975, stipulation and the September 8, 1975, order indicates that the parties did not intend the payments made pursuant to the 1975 order as alimony in the nature of support. The 1975 order stated that the five annual $12,000 payments were to be made "in lieu of all future payments of alimony, support, or any other sum from any other source". "In lieu of" means instead of; in place of; in substitution of. Black's Law Dictionary 708 (5th Ed. 1979). The payments made pursuant to the September 8, 1975, order were to be paid, not as alimony, but in place of alimony payments. The September 8, 1975, order also states that the agreement was to be "a full and complete satisfaction, compromise,

and discharge of all the claims and demands, actions and causes of action which either party has or may have against the other by reason of all matters in dispute in this proceeding". This statement encompasses all the claims and demands of the parties, not just Donna's claim for alimony. Thus, the language of the September 8, 1975, order indicates that the payments made were meant as something other than alimony in the nature of support.

Furthermore, pursuant to the terms of the September 3, 1975, stipulation, a nonnegotiable promissory note was prepared to further identify the terms of the annual payments. Grant contends that the note was simply intended as security in the event he died before all of the payments were made. However, Donna would be entitled to continue receiving the payments after Grant's death regardless of whether or not a note existed as evidence of the obligation. *Matter of Estate of Gustafson,* 287 N.W.2d 700 (N.D.1980). The note in this case accomplished more than merely securing payments in the event of Grant's death. If the payments had been alimony in the nature of spousal support and terminable upon Donna's death, Donna's estate would have had no claim for payments scheduled to be paid after her demise. However, in the instant case, in the event that Donna died before all of the scheduled payments were made, her estate could maintain a claim to collect on the note. Also, Grant would be obligated to make payments according to the terms of the note regardless of whether or not a material change occurred in the circumstances of one of the parties; whereas, if the payments had been alimony in the nature of spousal support the amount of the payments could possibly have been altered upon a proper showing of changed circumstances. *Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D.1981). For these reasons, the promissory note indicates that the payments made pursuant to the September 8, 1975, order were not alimony in the nature of spousal support, but instead were a type of property division.

The district court abused its discretion by amending the September 8, 1975, order to state that the payments made pursuant to that order were alimony in the nature of spousal support, pursuant to § 14–05–24, N.D.C.C. Our review of the record indicates that the payments made were a type of property division and not alimony in the nature of support. The district court was not correcting a clerical error but, instead, was altering the nature of the award ordered by the previous order and, therefore, improperly amended the September 8, 1975, order *nunc pro tunc.*

■ The final issue raised by Donna is that the district court erred when it concluded that the payments made pursuant to the September 8, 1975, order were alimony in the nature of support rather than a type of property settlement. As previously stated, upon review of the record, including the language of the 1975 stipulation and the 1975 order and the existence of the promissory note, we conclude that the payments made pursuant to the September 8, 1975, order were a type of property division and not alimony in the nature of support pursuant to § 14–05–24, N.D.C.C. The district court erred in concluding otherwise.

Grant asserts, however, that the payments made pursuant to the September 8, 1975, order could not be a type of property division because the distribution of property was accomplished pursuant to stipulation shortly after the parties' divorce in 1962. Grant claims that once a property settlement which is founded on a stipulation of the parties is performed, the matter of the division of marital property becomes res judicata and cannot be modified by a trial court at a later date. Grant contends that, pursuant to § 14–05–24, N.D.C.C., the district court did not have the authority to modify the original judgment entered in 1962 to provide for an additional distribution of marital property, but could only properly modify an award of alimony in the nature of support. In support of his position, Grant cites the case of *Kack v. Kack,* 169 N.W.2d 111 (N.D.1969).

This court discussed the *Kack* decision in *Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D. 1981), at 141, as follows:

"*Kack* appears to adopt a rule that whether or not an amount to be paid by the defendant to the plaintiff under a divorce decree is subject to modification under Section 14–05–24, N.D.C.C., depends upon whether or not such payment constitutes alimony or is an amount due under the property-settlement agreement of the parties, thus requiring the court to examine not only the settlement agreement but the order of the court as well. However, *Kack* also held that where the court approves a property-settlement agreement but expressly orders the defendant to pay to the plaintiff as alimony and support a sum of money per month, the amount ordered to be paid is alimony and is not an amount due under the agreement of the parties."

This court in *Eberhart,* went on to state, 301 N.W.2d at 141:

"After examining our prior decisions, we agree with JoAnn that this court has not heretofore finally concluded that the trial court has authority to alter alimony payments, where justified by a change of circumstances, regardless of whether the payments are considered true alimony or payments as a part of an equitable distribution of property agreed to by the parties. Nor do we find it necessary to so finally conclude in this instance."

In the instant case, following the parties' divorce in 1962, the marital property was distributed according to the terms of a stipulation between the parties. Both parties completely performed the requirements of the 1962 property agreement. The payments of $400 per month to Donna following the divorce, which were terminable upon her death or remarriage, appear to be payments of alimony in the nature of support pursuant to § 14–05–24, N.D.C.C.

In 1975, Donna moved for a modification of her alimony award, alleging changed circumstances. Grant contends that the district court only has the power to modify an alimony award upon an appropriate show-

ing of changed circumstances and that the nature of any such modified award must also be alimony in the nature of spousal support. Grant claims the district court lacks authority to provide for an additional distribution of marital property.

 As was the case in *Eberhart, supra,* we do not find it necessary to finally conclude whether or not a trial court has authority to alter alimony payments, where justified by a change of circumstances, regardless of whether the payments are considered true alimony or payments as part of an equitable distribution of property agreed to by the parties. It is not necessary in this instance to determine the authority of the court, because the district court did not modify the 1962 divorce judgment in 1975 to provide for an additional property distribution. The parties stipulated to alter the payments made pursuant to the divorce judgment. The terms of their stipulation provided for payments which were in the nature of a property-type award. The district court did not modify the 1962 divorce judgment when it issued its order on September 8, 1975; it simply approved the stipulation and agreement entered into by the parties. Regardless of whether or not a district court has the authority to modify a divorce decree to provide for an additional distribution of marital property, we find no statute or case law which would prohibit the parties from agreeing to a subsequent property distribution. Stipulations concerning the division of property entered into by the parties to a divorce action are governed by the law of contracts. *Galloway v. Galloway,* 281 N.W.2d 804 (N.D.1979).

Much of the confusion in this case as to the nature of the award has been caused by the term "alimony" which is found in the caption of § 14–05–24, N.D.C.C. Payments termed "alimony" are sometimes intended as spousal support and in other instances are a type of property division. We have said that to avoid confusion as to the nature of an award of "alimony", the term "spousal support" is more descriptive than the term "alimony" and should be given preference. *Urlaub v. Urlaub,* 325 N.W.2d 234 (N.D.1982). Perhaps the time has come for the Legislature to do away with the term "alimony" and for the courts to properly label payments ordered pursuant to § 14–05–24, N.D.C.C., as spousal support or as a type of property division, whichever is appropriate depending upon the circumstances of a case.

For the reasons stated in this opinion, the order of the district court dated April 7, 1982, is reversed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.