Genevieve REDLIN, Plaintiff and Appellee,

v.

Conrad G. REDLIN, Defendant and Appellant.

Civ. No. 870147.

Supreme Court of North Dakota.

Feb. 10, 1989.

Daniel E. Buchanan, Jamestown, for plaintiff and appellee.

James A. Wright, of Weiss, Wright & Paulson, Jamestown, for defendant and appellant.

VANDE WALLE, Justice.

Conrad Redlin appealed from an order of the district court of Stutsman County denying his motion to modify his child-support obligation and eliminate the payment of alimony. We affirm.

Conrad and Genevieve Redlin were married in 1954. They were divorced in 1980. At the time of their divorce Conrad and Genevieve owned a considerable amount of property. They owned a home in Jamestown and several vehicles and were in the process of selling two pieces of property for a total price of approximately $991,600.

They also owned a construction company called Redlin Earth Moving, of Hazen, North Dakota.

The divorce judgment incorporated a property and custody settlement agreement executed by the parties. The agreement provided that Genevieve receive the household furnishings, a 1977 Cadillac Seville automobile, a 1977 Chevrolet Suburban, and two Skidoo snowmobiles; it also required Conrad to pay Genevieve $30,000 and assign his interest in land the parties were selling to Benjamin Hoffman under a contract for deed. Conrad was to provide health-insurance coverage for the minor child. Genevieve was to release to Conrad all her right, title, and interest in the construction company. Conrad also received a 1978 Ford pickup, a recreational vehicle, and a motorcycle. The home of the parties was sold and Conrad and Genevieve each received $30,000. The agreement further provided:

"3.

"That [Conrad] shall pay, as and for the support of the minor child of the parties, the sum of Seven Hundred Fifty Dollars ($750.00) per month, ...

. . . . .

"6.

"A contract for deed [entered into on January 2, 1977, between Conrad and Genevieve, sellers, and Paul Redlin, buyer], ... shall be payable solely to [Conrad], except that his title to the lands therein shall be encumbered by a lien in favor of [Genevieve] until the amount of $420,000.00 has been paid to [Genevieve] as periodic alimony payable for twenty years at $1,750.00 per month. [Genevieve] will execute an assignment conveying all her right, title and interest in said lands to [Conrad]."

Approximately three months after the divorce judgment was entered, Conrad moved the court to modify the original judgment to permit him to substitute a monetary deposit for the land pledged as security for payment of the $420,000. The court modified the judgment, amending paragraph 6, quoted above, to read, in part:

"That the defendant shall place on deposit with Gate City Savings and Loan Association of Jamestown, North Dakota, a sum of money sufficient to fully pay his alimony obligation of $1,750.00 per month for a period of twenty (20) years."

Subsequently, Conrad again moved to amend the judgment of divorce, "reducing the child support payments from $750 per month to $250 per month and eliminating the payment of alimony in its entirety or, in the alternative, making an equitable distribution of the assets owned by the parties hereto and deposited in Gate City Savings and Loan Association of Jamestown, North Dakota." The underlying basis of his motion was that the $1,750–per-month payments were spousal support and thus subject to modification; and because he had suffered a material change in circumstances the spousal support should be eliminated. Genevieve opposed the motion, arguing that the monthly payment was a property distribution and therefore not subject to modification.

The trial court concluded that the $1,750 payments were intended by the parties to constitute installment payments on the final division of their property. In reaching this conclusion the trial court stated its decision was based upon "the Court's comparison of the amount of property received by Genevieve as against [the] total value of hers [sic] and Conrad's estate at the time of their divorce; that the payments were not [intended] to 'rehabilitate' Genevieve; and that the payments were not to end, even upon Genevieve's remarriage, Conrad's death, or for any other reason, except her death." These reasons, the court concluded, outweighed the fact that Genevieve agreed to treat the payments as income for tax purposes and the fact that the payments were to terminate in the event of her death.

The trial court also denied Conrad's request to reduce child support. The court stated that although assets owned by Conrad at the time of the divorce have since declined in value, the financial information submitted by Conrad was insufficient to show a material change in circumstances so as to justify the requested modification. Specifically, the court noted, Conrad did not furnish information on his income for the previous two tax years nor did he submit a current balance sheet.

On appeal, Conrad argues that the separation agreement unambiguously specified that the $1,750–per-month alimony payment was intended to be spousal support. He also contends that because he has suffered a material change in circumstances warranting the elimination of his spousal-support obligation, the money on deposit to secure payment of the spousal support should be given to him, or at least divided between him and Genevieve. Finally, he argues, the child-support payments should be reduced for the same reasons that he no longer can afford spousal support.

In addition to responding to Conrad's arguments, Genevieve has raised two issues of her own on appeal. First, she challenges that portion of the judgment which stated that Conrad is to pay attorney fees out of the funds on deposit securing the payment of the $1,750–per-month obligation; that is, Genevieve may have been awarded attorney fees from her own money. Genevieve has also requested this court to assess costs against Conrad pursuant to Rule 38, N.D.R.App.P.

We first consider whether the $1,750–per-month obligation was a division of property or spousal support.

 Stipulations in divorce proceedings concerning the division of property and spousal support are governed by the law of contracts. *Seablom v. Seablom,* 348 N.W.2d 920 (N.D.1984); *Coulter v. Coulter,* 328 N.W.2d 232 (N.D.1982); *In re Gustafson,* 287 N.W.2d 700 (N.D.1980). Contract interpretation is a matter of law and must be determined by the court. *Bridgeford v. Bridgeford,* 281 N.W.2d 583 (N.D.1979). If the contract is ambiguous, the court may attempt to ascertain the intent of the parties from the contract as a whole or, if the intent of the parties cannot be gleaned from the contract, it may hear other evidence regarding the parties' intent. Whether provisions in a contract are ambiguous is a question of law. *Produc-*

*tion Credit Ass'n of Fargo v. Foss,* 391 N.W.2d 622 (N.D.1986). Interpretation of a contract is a question of law if the intent of the parties can be ascertained from the writing alone. *Zitzow v. Diederich,* 337 N.W.2d 799 (N.D.1983). But the parties' intent in a written contract is a question of fact if extrinsic evidence must be used. *Id.*

A close examination of the settlement agreement as a whole does not definitively reveal whether the parties intended the payments to be in the nature of spousal support or property division. Their use of the word "alimony" is not defined in the agreement nor is the document as a whole conclusive of what is meant by the term "alimony." Therefore, because extrinsic evidence must be used to determine the intent of the parties, whether the payments in question are spousal support or a division of property is a question of fact. Consequently, the ruling of the trial court must be upheld unless we conclude that its findings were clearly erroneous. Rule 52(a), N.D.R.Civ.P.

The term "alimony" is patently ambiguous and has generated numerous pages in judicial opinions. E.G., *Rustand v. Rustand,* 379 N.W.2d 806 (N.D.1986), and cases cited therein. As we stated in *Lipp v. Lipp,* 355 N.W.2d 817, 820 (N.D.1984):

"The North Dakota Century Code does not define the term 'alimony.' The term is used in connection with child support in §§ 11–16–01, 14–03–17, 14–08–07, and 14–12.1–24; with maintenance of either spouse in § 14–05–25, and with demands for change of judge in § 29–15–21. The term appears in conjunction with security requirements for support or maintenance in § 14–05–25, decrees of separation in § 14–06–05, and assignments under the Uniform Crime Victims Reparation Act in § 65–13–15. Finally, in § 14–05–24 the term appears as 'Permanent alimony' but only in the headnote." [Footnotes omitted.]

We reasoned in *Lipp* that the term "alimony" as used in North Dakota statutes and case law means "any payment to be made to the other spouse for any purpose, including payment as a part of a property divi-

sion, spousal support, or child support or a combination of any of them." *Lipp,* 355 N.W.2d at 820.

In attempting to ascertain what the parties intended when they used the term "alimony," it is helpful to consider the functions of spousal support and property division. In *Lipp,* this court stated:

"A division of property is based upon each spouse's respective rights to an equitable share of property which has been accumulated during the marriage by the parties' joint effort for their mutual benefit. In contrast, spousal support serves various functions of rehabilitation and providing maintenance to a spouse incapable of rehabilitation." *Lipp,* 355 N.W. 2d at 820. [Citations omitted.]

In discerning whether an amount paid by one spouse to the other is a property division or spousal support, several factors must be considered. Factors which may indicate that the payments are distributions of property include: payments that do not terminate after the obligee dies [*Seablom v. Seablom, supra*]; payments that continue even after obligee remarries [*Nugent v. Nugent,* 152 N.W.2d 323 (N.D. 1967)]; excluding the payments in controversy, a large disparity in the property divided which is otherwise unexplained [*Seablom v. Seablom, supra*]; payments that do not terminate on the obligor's death [cf. *In re Gustafson, supra*]. In addition, as in this case, security for payment may tend to indicate property distribution since deferred-property payments are dischargeable in bankruptcy, unlike spousal-support payments. E.g., *Deems v. Schauer,* 470 F.Supp. 255, 256 (D.N.D.1979) ["A debt arising from an award of attorney's fees in divorce proceedings is not dischargeable in bankruptcy if it is in the nature of alimony and support. On the other hand, if the award is in the nature of a property settlement, the debt is dischargeable."]. In contrast, factors which may indicate the amount paid is spousal support include: payments that are monthly [*Seablom v. Seablom, supra*]; payments that terminate upon the obligee's death or remarriage [*Coulter v. Coulter, supra*].

Any one of these factors, standing alone, does not necessarily show whether the amount paid is a property division or spousal support. Rather, all factors must be considered together along with the specific facts of the case in order to determine the status of the assets in dispute.

█ Payments to Genevieve were to continue even if she remarried. Ordinarily, spousal support terminates upon the remarriage of the recipient absent extraordinary circumstances. See, e.g., *Bullock v. Bullock*, 376 N.W.2d 30 (N.D.1985). The trial court noted that "[n]o mention was made in the property settlement of rehabilitation of Genevieve or the need for it," which is one of the underlying theories of spousal support. That there was no apparent need to provide Genevieve with spousal support lends credence to the argument that the payments were not spousal support; they were a form of property division.

Furthermore, if the $420,000 was not a division of property, Genevieve would receive a very small percentage of the couple's property. While it is true that parties may agree to divide their property disproportionately and a trial court may adopt that division, an explanation should be given for the disparity. See *Volk v. Volk*, 376 N.W.2d 16 (N.D.1985). No such explanation was given in this case, arguably, as Genevieve points out, because the $420,000 was intended to be property and, when considered as such, there was no disparity in the property divided.

Paragraph 5 of the divorce judgment dated February 14, 1980,[1] reads:

"That the plaintiff is granted the gross sum of $420,000.00 as alimony, payable to her at the rate of $1,750.00 per month for a period of twenty (20) years, *or until fully paid*. The alimony will not terminate on remarriage, death of the defendant, or any other eventuality, except death of the plaintiff, *until fully paid*." [Emphasis added.]

The fact that a fixed sum was to be paid as well as the language "or until fully paid"

suggests an intent that this amount was a division of property. But cf. *Hanson v. Hanson*, 404 N.W.2d 460 (N.D.1987) [spousal support may be awarded as a lump sum]. Although the phrase "or until fully paid" is the trial court's, it is consistent with the language of the parties and indicative of their intent.

Further, we do not believe it is coincidental that the alimony payments were to expire at the same time as the last payment was due on the contract for deed, which was the original collateral under the separation agreement. Nor are we persuaded that because the payments were to cease in the event of Genevieve's death, the payments are spousal support. In her affidavit filed in resistance to Conrad's motion, Genevieve points out that the reason she agreed to that provision was that Conrad promised to provide for the children of the marriage out of his estate, thus assuring them of an inheritance. Presumably, there would be no need for the property-distribution payments to be made to her estate, and in turn distributed to her children, when her children would inherit directly from their father's estate.

Finally, Conrad was allowed to deduct the payments made to Genevieve for income-tax purposes. Genevieve points out in her affidavit that Conrad was concerned with saving taxes so she agreed to call the payments "alimony" in order that Conrad could take a tax deduction for the payments, notwithstanding her understanding at the time they entered the separation agreement that the payments were a portion of her share of the property. The trial court found that the fact Conrad was allowed to deduct the payments for purposes of paying income tax did not outweigh the other factors indicating that the payments were a form of property division. There is sufficient evidence to support the finding that the use of the term "alimony" for tax purposes was not indicative of the true nature of the payments.

We conclude that the trial court's finding that the payments were intended to be a part of the property division and thus not

---

1. The divorce judgment was amended twice: May 27, 1980, and November 14, 1980. How-ever, the language of paragraph 5 did not change.

subject to modification was not clearly erroneous.

Conrad next argues that the trial court erred in not reducing his child-support obligation. It is well established in North Dakota that courts vested with the power to grant divorces and award child-support money have the power to change the amount to be paid whenever it is shown that the circumstances of the parties have materially changed. *Burrell v. Burrell*, 359 N.W.2d 381 (N.D.1985). In order to determine whether there has been a material change in circumstances, the trial court must conduct a fact-finding inquiry. *Id.* If the court is satisfied that the party seeking a modification has shown there has been a material change in circumstances, it may modify the child-support award accordingly. The findings of fact made by the trial court will not be set aside unless clearly erroneous. Rule 52(a), N.D.R. Civ.P. See also *Heller v. Heller*, 367 N.W. 2d 179 (N.D.1985).

In finding that there was no material change in circumstances justifying a reduction in child support, the trial court stated:

"[I]t is clear that although there was a substantial decline in the value of the land sold to Paul Redlin and that Conrad's earth moving business ended unprofitably, there are few other facts indicating Conrad's present ability to pay child support.... Although this matter came on for hearing in March, 1986, copies of Conrad's 1985 and 1986 income tax returns were not made available to the court nor any explanation given for their absence. No recent balance sheets were presented to show Conrad's current financial condition."

Because of this evidence or, more accurately, lack thereof, the trial court's decision to deny Conrad's request to reduce child-support payments was not clearly erroneous.

Genevieve challenges that portion of the judgment which stated that Conrad is to pay attorney fees out of the funds on deposit securing the payment of the $1,750–per-month obligation. She suggests that she may have been awarded attorney fees from her own money. Although Genevieve did not file a cross-appeal, we note that although the money to pay the fees is to be withdrawn from the Gate City account rather than from Conrad's personal checking account, Conrad's obligation to Genevieve is not reduced. He still must make payments totaling $420,000.

Genevieve has also requested this court to assess costs against Conrad pursuant to Rule 38, N.D.R.App.P. That rule specifies:

"If the court determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, it may award just damages and single or double costs including reasonable attorney's fees."

In support of her argument, Genevieve states that "Conrad has delayed the prosecution of this appeal for more than a year, causing uncertainty to [me], as well as abusing the rules for the orderly processing of appeals."

Because counsel for both Conrad and Genevieve failed to comply with certain deadlines in the rules, the request for costs under Rule 38 is denied. Genevieve is entitled to statutory costs.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ.