**Shirley RAMSDELL, Plaintiff and Appellant,**

v.

**Gene J. RAMSDELL, Defendant and Appellee.**

**Civ. No. 890271.**

Supreme Court of North Dakota.

April 25, 1990.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellant; argued by Donald L. Peterson.

Thomas Law Firm, Minot, for defendant and appellee; argued by Richard B. Thomas.

MESCHKE, Justice.

Shirley Ramsdell appealed from a judgment ending her alimony after she remarried. We affirm.

Shirley and Gene J. Ramsdell were divorced in 1985 after 14 years of marriage. The divorce decree included a stipulation which Shirley and Gene agreed upon. The agreement and decree had an alimony clause:

## ALIMONY

Wife shall receive alimony in the sum of $300.00 per month, commencing the first day of the first month immediately following entry of divorce between the parties.

In 1988, Shirley sued Gene for delinquent alimony and for delivery of certain property apportioned to her by the agreement and divorce decree. In his answer, Gene claimed that since Shirley was living with another man, alimony should be terminated. On December 23, 1988, Shirley married the man with whom she was living.

After trial in 1989, the trial court found that Shirley had received delivery of the property sought, that she had received about $50,000 proceeds from a personal injury claim which had been set aside to her in the agreement and decree, and that she had remarried. The trial court concluded that Shirley's alimony was not a part of the property settlement, thus making it spousal support. The trial court said that both Shirley's remarriage and her personal injury proceeds were "extraordinary circumstances" which justified termination of her spousal support. The judgment terminated Shirley's alimony as of January 1, 1989. Shirley appealed.

On appeal, Shirley argued that the alimony was intended to be permanent and unchangeable. Gene countered that nothing in the agreement or decree suggested that this alimony was intended as a part of the property division. We agree that, if this alimony was intended to be permanent as part of a property division, it would have been improper for the trial court to end it upon Shirley's remarriage.

We recently recapped the principles for interpreting a divorce settlement:

Stipulations in divorce proceedings concerning the division of property and spousal support are governed by the law of contracts. Contract interpretation is a matter of law and must be determined by the court. If the contract is ambiguous, the court may attempt to ascertain the intent of the parties from the contract as a whole or, if the intent of the parties cannot be gleaned from the contract, it

may hear other evidence regarding the parties' intent. Whether provisions in a contract are ambiguous is a question of law. Interpretation of a contract is a question of law if the intent of the parties can be ascertained from the writing alone. But the parties' intent in a written contract is a question of fact if extrinsic evidence must be used. (Citations omitted).

*Redlin v. Redlin,* 436 N.W.2d 5, 7–8 (N.D. 1989). These principles pertain here because, as we have often preached, "the word *alimony* is ambiguous because the word may denote either property distribution or spousal support." *Seablom v. Seablom,* 348 N.W.2d 920, 924 (N.D.1984). *See also Lipp v. Lipp,* 355 N.W.2d 817, 820 (N.D.1984); *Rustand v. Rustand,* 379 N.W.2d 806 (N.D.1986). The Ramsdell's agreement did not define its use of the word "alimony" and did not clearly spell out whether Shirley's alimony was intended as property or support.

The trial court heard testimony on the intended purpose of this alimony. Shirley testified that she believed the alimony was intended to be permanent. Gene recognized the possible ambiguity of the term alimony, but he contended that this monthly payment was intended as spousal support. He pointed out that the alimony clause was placed ahead of and separate from clauses about "Property Owned" and "Division of Property." Gene also argued that Shirley "received a significant portion of the marital assets" while he "received all of the marital debts" except for Shirley's medical bills from her personal injury. As *Redlin* recited, 436 N.W.2d at 8, each of these factors tends to indicate spousal support rather than a payment for property division.

The trial court determined that "[t]he alimony awarded ... was not utilized to effect a distribution of the property of the parties." An appellant bears the burden of demonstrating that a finding is clearly erroneous, and a finding is clearly erroneous only when, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. NDRCivP 52(a); *Weigel v. Kraft,* 449 N.W.2d 583 (N.D.

1989). We conclude that the finding, that this "alimony" was not intended as property, was supported by sufficient evidence and was not clearly erroneous.

Alternatively, Shirley argued that her changed circumstances did not require termination of spousal support. Instead, Shirley argued, her permanent disability from a bout with polio in 1949 before her marriage to Gene was an extraordinary circumstance which justified continuation of spousal support in spite of her remarriage. Shirley also insisted that her personal injury proceeds were contemplated in the divorce agreement and were "not a valid reason to terminate alimony."

Quoting from *Nastrom v. Nastrom,* 262 N.W.2d 487, 490 (N.D.1978) and from *Nugent v. Nugent,* 152 N.W.2d 323, 327 (N.D. 1967), Gene countered that "remarriage makes out 'a prima facie case which requires the court to end [alimony payments], in the absence of proof of some extraordinary circumstances justifying its continuance.'" Since Shirley did not prove her circumstances were so extraordinary as to require continuation of spousal support, Gene argued, the trial court's termination of support should be affirmed. We agree.

■■■ Spousal support is subject to change upon a showing of materially changed circumstances. NDCC 14–05–24; *Nastrom,* 262 N.W.2d at 490. Ordinarily, remarriage is a changed circumstance which calls for an end to spousal support, unless "extraordinary circumstances" require continuation of support. Unfortunately, in its analysis in this case, the trial court transposed expression of this applicable principle, seemingly requiring "extraordinary circumstances" to end spousal support rather than to continue it. This was incorrect.

In *Roen v. Roen,* 438 N.W.2d 170 (N.D. 1989), we reviewed a number of our decisions on this subject. We explained that, generally, the "trial court will act to terminate unlimited spousal support upon death or remarriage of the supported spouse unless there are extraordinary circumstances which justify its continuance." *Id.* at 173.

*See also Nastrom,* 262 N.W.2d at 491 ("The proponent of the continuance of alimony payments following remarriage carries a considerable burden."). In a particular case, a spouse's disability may be a factual circumstance so extraordinary that spousal support should be continued in spite of remarriage. However, we are unwilling to rule that a former spouse's disability alone always compels continuation of support during another marriage.

■ Here, Shirley's disabled condition preceded her marriage to Gene although it had been compounded by her personal injury in an auto accident while married to Gene. Shirley was unable to persuade the trial court that her disability and the economic circumstances of her new marriage combined to require continuation of spousal support by Gene, her former husband. As an appellate court, this court does not usually determine facts and we cannot substitute new factual findings for those made by the trial court. We conclude that the trial court's termination of Shirley's spousal support because she remarried was not clearly erroneous.

■ We doubt that, by itself, Shirley's realization of the proceeds from her personal injury claim, which was her separate property, was a reason to end spousal support. On the other hand, her overall financial circumstances in her second marriage were relevant for the trial court to weigh with her continuing disability in assessing the need to continue support after her remarriage. *See* Annotation, *Alimony as Affected by Wife's Remarriage, in Absence of Controlling Specific Statute,* 48 A.L.R.2d 270, 299 (1956). *Cf. Nastrom,* 262 N.W.2d at 491. We read the trial court's reference to Shirley's personal injury proceeds as bearing upon her financial circumstances in her second marriage, not as identifying another changed circumstance to end spousal support. Indeed, Shirley chose not to present any other evidence about her economic circumstances with her new husband. In any event, as we held in *First National Bank of Belfield v. Burich,* 367 N.W.2d 148 (N.D.1985), we do not reverse a correct result below merely because the trial court also assigned an incorrect reason for its decision. Shirley's remarriage was reason enough to end her spousal support.

We conclude that no extraordinary circumstances compelled continuance of spousal support to Shirley after she remarried. Accordingly, we affirm the termination of Shirley's alimony.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, dissenting.

The problem I have is that if the $50,000 personal injury settlement were distributed to Ms. Ramsdell as part of the property division, then the division would be equal and the trial court's finding that the $300.00 monthly "alimony" was not property division would not be clearly erroneous. *Redlin v. Redlin,* 436 N.W.2d 5 (N.D.1989). However, the trial court appears to have found that the personal injury settlement was not part of the property division because it found that the settlement was an "extraordinary circumstance" justifying the termination of "alimony." That being the case, there was obviously a huge disparity in the property division which, under *Redlin,* would be a strong factor in favor of a determination that the $300.00 per month "alimony" is property division, not spousal support.

In my view, it follows that the trial court's finding that the $300.00 a month "alimony" was not property division was clearly erroneous. The "alimony" was to be paid every month with no limitations expressed concerning remarriage, death or duration and it compensated for a marked disparity in Ms. Ramsdell's award of property. I, therefore, respectfully dissent.

If I did not disagree with the majority's holding on the interpretation of the term "alimony," I would concur with its holding on the issue of extraordinary circumstances, subject to the following proviso.

In her article, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225 (1985), Professor Marcia O'Kelly analyzes the respective purpose and characteristics

of rehabilitative spousal support (used to mitigate economic disadvantage) and compensatory spousal support (used to compensate when rehabilitation is wholly or partially impossible). O'Kelly suggests that spousal support of either type should be viewed as an entitlement based on the recipient's shared contributions to the marital enterprise. *Id.* at 260. However, she also recognizes our precedents that there is no indefinite entitlement to compensatory support to maintain an established standard of living. *Bauer v. Bauer,* 356 N.W.2d 897 (N.D.1984); *Nugent v. Nugent,* 152 N.W.2d 323 (N.D.1967).

In *Bauer,* we affirmed the continuation of rehabilitative support to pay college expenses of the remarried recipient but held that there were no extraordinary circumstances justifying the continuation of the compensatory support of $50.00 a month for life. Referring to this latter holding, O'Kelly states:

"That conclusion, however, would not preclude arguing in an appropriate case that compensatory support should not terminate at remarriage because the underdeveloped earning capacity of the recipient could not be or was not yet rehabilitated and she had not been proportionately compensated for her contributions to the enhanced earning capacity of her former spouse." *Id.* at 260–61, n. 151.

No such arguments were made in this case and no facts were presented in support of them. I agree that Ms. Ramsdell did not fulfill her burden of establishing extraordinary circumstances.

However, I would reverse on the ground that the trial court's finding that the award of "alimony" is spousal support is clearly erroneous.