**Boyd F. ADDY, Plaintiff and Appellant,**

v.

**Patricia E. ADDY, Defendant and Appellee.**

**Civ. No. 890212.**

Supreme Court of North Dakota.

June 1, 1990.

Richard B. Baer, P.C. (argued), Bismarck, for plaintiff and appellant.

Chapman and Chapman, Bismarck, for defendant and appellee; argued by Daniel J. Chapman.

MESCHKE, Justice.

Boyd F. Addy appealed from an amended divorce decree increasing his child support payments, continuing part of his "alimony" payments as property division, and enforcing his agreement to pay his former spouse's income taxes. We affirm and remand to the trial court for a determination of attorney's fees to Addy's former spouse for the appeal.

Boyd and Patricia E. Addy were divorced in 1984 after 14 years of marriage. Their settlement agreement was incorporated into the divorce decree. Their two children were placed with Pat, and Boyd agreed to pay her $250 support per child per month. The agreement and decree included an alimony clause:

12. That the plaintiff shall pay alimony to the defendant in the amount of One Thousand Five Hundred Dollars ($1,500.00) per month for one hundred twenty-one (121) months commencing February 2, 1984, unless she remarries. If defendant remarries before February 4, 1989, then she shall receive One Thousand Five Hundred Dollars ($1,500.00) per month alimony until February 4, 1989, at which time the alimony payments shall be reduced to Five Hundred Dollars ($500.00) per month until March 4, 1994. If defendant remarries after February 4, 1989, she shall receive Five Hundred Dollars ($500.00) per month alimony until March 4, 1994. As additional alimony, plaintiff shall pay Six Thousand Dollars ($6,000.00) on January 5, 1984. In the event that defendant is cohabitating with a male person, then the alimony shall be reduced as if defendant had actually remarried.

In 1985, Boyd sought to terminate alimony. The trial court reduced Boyd's alimony payment to $1,000 but refused to terminate it "because the alimony award [was] part of the property distribution...." In 1989, Boyd again moved to terminate alimony and to adjust child visitation and medical expenses. Pat moved to increase child support, to enforce Boyd's unfiled agreement to pay her income taxes, and to require Boyd to pay her travel expenses and attorney fees on the motions.

After an evidentiary hearing, the trial court ordered that Boyd pay increased child support of $600 per child per month, that Boyd continue to pay $500 alimony per month as property division, and that Boyd "would be liable for any taxes payable by

[Pat] for the tax years 1984, 1985 and 1986...." The trial court determined that $1,000 of the agreed alimony had been intended as spousal support and that $500 had been intended as property division. Since Pat was now cohabiting, the trial court ended the remaining $500 of support alimony. The trial court denied reimbursement to Pat for her expenses on the motions. Boyd appealed.

On appeal, Boyd challenged the trial court's rulings that child support should be increased, that $500 of the alimony was property division, and that Boyd's agreement to pay Pat's income taxes was enforceable. Pat sought attorney's fees for the appeal.

## CHILD SUPPORT

Boyd challenged the increased child support. While his monthly after-tax income had increased from $6,500 to $7,500 since the divorce, Boyd pleaded that he was impoverished by debt:

His debts equal[led] some $249,000.00 plus dollars. The value of his home has dropped to $69,000.00 with a debt of $129,000.00. The house in Harvey fell from a value of some $25,000.00 to $8,000.00 with a mortgage of $22,000.00. As a result of the divorce and its related problems, Boyd owe[d] some $22,500.00 to his retirement fund, plus $60,000.00 to his Professional Corporation.

Boyd argued, too, that Pat's earnings had increased, that her live-in boyfriend helped support her household, and that Pat lived in a "ritzy" California neighborhood. Boyd argued that no material change of circumstances justified increasing child support and that the amount was not based on the needs of the children and on his ability to pay.

Pat countered that, with after-tax income of $90,000 a year, Boyd was "capable of making substantial payments for child support of his children when they were being deprived of certain things that they need for the development of their respective skills and interests." Pat asserted that Boyd had "in excess of $3,000.00 [per month] with which to pay such things as

child support. ... even without trying to figure out the financial tangle which exists in his relationship with the various groups with whom he is associated" and that "he is also building up his investment in his highly-productive medical clinic." Pat acknowledged that she was earning more but argued that her living expenses and the children's needs had gone up as well.

■ The parent who seeks modification of child support must show changed conditions. *Freyer v. Freyer*, 427 N.W.2d 348, 351 (N.D.1988). In *Skoglund v. Skoglund*, 333 N.W.2d 795, 796 (N.D.1983), we explained:

Even though the judgment providing for child support payments is based on an agreement between the parties, the court may modify the initial decree upon the proper showing of changed circumstances. The change in circumstances with reference to a modification of child support payments is one based primarily on a change in financial circumstances. When changed circumstances are based on a change in financial circumstances, the needs of the supporting spouse and his or her ability to pay, as well as the needs of children and the dependent spouse, must be taken into account in determining the amount of child support to be paid. The court must attempt to strike a balance between the needs of the children and the ability of the supporting parent to pay. However, the ability to pay support is not necessarily determined solely on the basis of income earned. A party's net worth, including the extent of his physical assets and his earning ability as demonstrated by past income, must be taken into consideration. (Citations omitted).

*See also Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D.1989). In *Olson v. Olson*, 445 N.W.2d 1, 4 (N.D.1989), we said that a determination of the amount of child support is a matter of fact reviewed under the "clearly erroneous" standard of NDRCivP 52(a).

The trial court considered evidence on the children's needs and on Boyd's increased ability. Pat submitted an itemiza-

tion of her household expenses and Boyd submitted a financial statement. According to testimony, the children were talented; Kimberly played the piano by ear and Michael was intellectually gifted. Michael wanted a computer to further his studies, and Kimberly wanted to continue horseback riding lessons. Living expenses were higher in California, and the needs of the children have increased as they have grown older.

■ The trial court had enough information about changes in both parent's financial circumstances to support a finding of changed conditions to justify increasing support. *Corbin v. Corbin*, 288 N.W.2d 61, 66 (N.D.1980). The trial court determined that "[t]he children have a need and the father has the ability to pay an increase in child support...." The amount of the support was commensurate to the children's past standard of living and to Boyd's current income. *See Heggen v. Heggen*, 452 N.W.2d 96, 102 (N.D.1990); *Bagan v. Bagan*, 382 N.W.2d 645, 648 (N.D.1986). As increased, the amount of support was well within the then existing "guideline" amounts. *Thorlaksen v. Thorlaksen*, 453 N.W.2d 770, 774, n. 2 (N.D.1990). We conclude that the increased child support was not clearly erroneous.

### ALIMONY

Boyd argued that no part of the alimony was property division because Pat had received cash, a vehicle, and household furnishings worth a total of $75,000, while he, on the other hand, "received substantial debt [$193,000], both personal and professional" with his property distribution. Pat responded that Boyd had received his medical clinic which greatly outweighed her property share. Pat also argued that the 1985 order, which ruled that the alimony was partly spousal support and partly property division, had not been appealed and was conclusive. In *Ramsdell v. Ramsdell*, 454 N.W.2d 522, 523–524 (N.D.1990), we explained:

> We recently recapped the principles for interpreting a divorce settlement: "Stipulations in divorce proceedings concern-

ing the division of property and spousal support are governed by the law of contracts. Contract interpretation is a matter of law and must be determined by the court. If the contract is ambiguous, the court may attempt to ascertain the intent of the parties from the contract as a whole or, if the intent of the parties cannot be gleaned from the contract, it may hear other evidence regarding the parties' intent. Whether provisions in a contract are ambiguous is a question of law. Interpretation of a contract is a question of law if the intent of the parties can be ascertained from the writing alone. But the parties' intent in a written contract is a question of fact if extrinsic evidence must be used." (Citations omitted). *Redlin v. Redlin*, 436 N.W.2d 5, 7–8 (N.D.1989). These principles pertain here because, as we have often preached, "the word *alimony* is ambiguous because the word may denote either property distribution or spousal support." *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D.1984). (Citations omitted).

Like Ramsdells', the Addys' settlement agreement did not clearly delineate what was intended as spousal support and what was intended as property division.

After hearing the evidence, the trial court found:

1. The divorce agreement entered into by the parties provided for monthly property division payments of $500 and alimony of $1000.

2. The Court because of changed circumstances ordered a reduction of the alimony to $500 in April 1985.

3. Since Patricia Addy is cohabiting with someone, the $500 alimony remaining is ordered discontinued, pursuant to the agreement.

4. The $500 property payment shall continue as agreed between the parties....

These findings were consistent with its earlier interpretation of the alimony clause in 1985.

In 1985, in an explanatory letter to the former spouses and their accountants, the trial court said:

The real problem here is what did the parties intend in paragraph 12: alimony alone or property alone or a mixture of the two.

I am satisfied that the 121 payments of $1500 ($181,500) was intended as both property division and alimony.

Assigning respective amounts to these payments should have been the responsibility of the parties. As I cautioned in my opinion, I was reluctant to go very far in changing these payments because of the mixture of property division.

However, as I see this agreement, $500 of the $1500 had to have been a property division and the remaining $1000 was alimony because of the wording which states that even if she remarries the payments were to continue at a minimum of $500. Since a property distribution can't be disturbed but only alimony can, the $500 reduction that I ordered was a reduction in alimony. This logically means that the present $1000 payments are divided as $500 property and $500 alimony.

■ An appellant bears the burden of demonstrating that a finding is clearly erroneous, and a finding is clearly erroneous only when, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. NDRCivP 52(a); *Ramsdell*, 454 N.W.2d at 524. Monthly alimony of $500 was to continue after February 1989, regardless of Pat's remarriage, cohabitation, or need for support. These factors indicated property division. *Redlin*, 436 N.W.2d at 9. We are satisfied that $500 of the alimony was intended as a property division which could not be altered by the trial court. *See Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817, 819 (1923). The trial court's finding was not clearly erroneous.

## TAX ADDENDUM

Pat moved to enforce an "Addendum to Stipulation" which had not been filed with the divorce court in 1984. This "Addendum" said:

1. Boyd shall also pay Patricia's income tax resulting from the alimony payments for 1984, 1985 and 1986.

Based on the "Addendum," the trial court ruled that Boyd was "liable for any taxes payable by [Pat] for the tax years 1984, 1985 and 1986."

On appeal, Boyd argued that the "Addendum" was not intended to be part of the divorce settlement. He contended that the Addendum was unenforceable because it was unsupported by consideration and because Pat had delayed in enforcing it. Pat responded that Boyd's attorney prepared the Addendum for the divorce settlement and that it was intended to protect her from adverse tax aspects of allocating more of the payments to alimony than to child support.

The trial court heard considerable evidence on the subject. Pat testified that, in early negotiations, she was to receive $2,000 split evenly, $1,000 for child support and $1,000 for alimony. The split was shifted to $1,500 alimony and $500 child support in the final settlement and the Addendum was then prepared to protect her from any adverse tax consequences of that shift. Pat testified that, because Boyd deducted all of his alimony payment as support on his tax returns, her tax assessments arose when she did not report the property portion of $500 as income. According to Pat, her tax problems were caused by Boyd's failure to comply with the 1985 court ruling that $500 of the alimony was property division.

Boyd's first attorney testified about preparing the settlement and the Addendum: "Apparently Boyd and Pat had agreed that they wanted additional items covered in regards to their property settlement, such as who's going to pay income tax...." Pat testified that she had been assured that the Addendum was binding even though not filed with the divorce settlement. Evidence on income tax deficiencies assessed against Pat for 1985 was submitted, as was evidence on the possibility of future assessments for 1986, 1987, and 1988. *See Baird v. Ridl*, 455 N.W.2d 188 (N.D.1990). The trial court found that

"[t]he parties by separate contemporaneous written agreement and valuable consideration provided that Dr. Addy would be liable for any taxes payable by Patricia Addy for the tax years 1984, 1985 and 1986...."

▮ Generally, separate instruments relating to the same transaction and contemporaneously executed are read and construed together. *Nantt v. Puckett Energy Co.*, 382 N.W.2d 655, 658 (N.D.1986). We see no lack of consideration in these contemporaneous agreements. 17 Am.Jur.2d *Contracts* § 264 (1964). Mere delay in enforcing contractual rights does not ordinarily estop a party from doing so. *Kouba v. Great Plains Pelleting, Inc.*, 372 N.W.2d 884 (N.D.1985). We conclude that the trial court's finding that the Addendum was enforceable was not clearly erroneous.

We affirm the trial court in all respects.

### ATTORNEY'S FEES

Pat asked for an award of attorney fees on appeal, alleging that "the cost of this litigation [was] a drain upon her meager income...." The trial court and this court have concurrent jurisdiction to award attorney's fees on appeal. NDCC 14–05–23. We prefer that the trial court determine the amount of attorney's fees for a spouse on a divorce appeal. *Martin v. Martin*, 450 N.W.2d 768 (N.D.1990). We remand to the trial court for an award of attorney's fees to Pat for this appeal.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.